F. A. VILLALBA & COMPANY,
Plaintiff,

v.

The UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING & PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA, AFL-CIO, and Plumbers & Steamfitters Local No. 231, Defendants.

No. EP–75–CA–71.

United States District Court,
W. D. Texas,
El Paso Division.

April 7, 1976.

Charles L. Berry and William J. Derrick, Kemp, Smith, White, Duncan & Hammond, El Paso, Tex., for plaintiff.

William R. Hayden, O'Donoghue & O'Donoghue, Washington, D.C., for defendants.

MEMORANDUM AND ORDER

SESSIONS, District Judge.

This summary judgment motion asks the Court to determine whether the Defendant United Association's constitution provides for such far-reaching control of local unions that the locals, in essence, are not autonomous, but are subdivisions of the International.

Plaintiff, F. A. Villalba & Company, brings this suit under Section 303 of the Labor Management Relations Act, 29 U.S.C. § 187,[1] alleging that it has suffered undetermined damages as a result of al-

---

1. Sec. 187 provides:

(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

(b) Whoever shall be injured in his business or property by reason of any violation of sub-

section (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

leged unfair labor practices committed by the Defendant, Plumbers & Steamfitters Local No. 231 (hereinafter "Local") and the Defendant, United Association of Journeymen and Apprentices of the Plumbing & Pipefitting Industry of the United States and Canada, AFL-CIO (hereinafter "United Association" or "International").

The Complaint alleges that the Local Union and the United Association violated § 8(b)(4)(ii)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(ii)(B) [2] by "threatening, coercing and/or restraining Jordan and Nobles Construction Company, with an object thereof being to force or require Jordan and Nobles Construction Company to cease from doing business with F. A. Villalba & Company." More specifically, the Complaint sets forth that during a December 6, 1974, conversation between Mr. Paco Jordan and Mr. John Nobles, of Jordan and Nobles Construction Company, and Mr. Norris Clark, Business Manager of Local 231, Mr. Clark persuaded Jordan and Nobles, who were ultimately awarded the general contract on the Special Events Center at the University of Texas at El Paso, not to use F. A. Villalba as their mechanical subcontractor on the job.

The United Association has been named as a co-defendant in this action even though the Complaint fails to set forth a single instance of involvement by the United Association in the alleged unlawful conduct. Plaintiff has attempted to justify the presence of the International as a co-defendant by asserting that the International is vicariously liable for the alleged wrongful conduct of the Local Union solely because of the Local's affiliation with the International. Therefore, whether the United Association is a proper defendant in the present suit depends entirely upon a determination of whether the United Association may be held vicariously liable for the alleged unlawful acts of the Local Union.

Plaintiff specifically argues that the responsibility of the Defendant United Association for the acts of its local unions, members, and officers is to be measured by reference to ordinary doctrines of agency, and that questions relating to the actual existence of an agency relationship are questions of fact to be decided by a jury, and not resoluble as a matter of law. In support of its contentions, Plaintiff relies on the cases of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and *Great Coastal Express v. International Brotherhood of Teamsters*, 511 F.2d 839 (4th Cir. 1975).

The *Gibbs* decision deals specifically and determinately with pendent federal jurisdiction of non-federal claims, federal jurisdiction and preemption, secondary boycotts, the scope of remedy in cases of labor violence and with the standard of proof necessary in cases of labor violence. That passage upon which the Plaintiff relies is as follows:

".   .   . [T]he responsibility of a union for the acts of its members and officers is to be measured by reference to ordinary doctrines of agency .   .   ." 383 U.S. 715, 736, 86 S.Ct. 1130, 1144, 16 L.Ed.2d 218, 234.

This passage is in interpretation of 29 U.S.C. § 185(e) [3] and is taken to mean that

**2.** (b) It shall be an unfair labor practice for a labor organization or its agents .   .   . to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is .   .   . forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing. 29 U.S.C. § 158(b)(4)(ii)(B).

**3.** For the purposes of this section, in determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling. 29 U.S.C. § 185(e).

agency and agency questions are to be judged by common law standards or state law standards, and not on the basis of actual authority or subsequent ratification.

The *Great Coastal* opinion, cited above and relied upon by Plaintiff, quotes *Gibbs* for the proposition that agency is a question of fact. The central controversy in *Great Coastal* was the measure of damages caused to the plaintiff trucking firm by a secondary boycott imposed by a local of the International Brotherhood of Teamsters. After entry of a judgment non obstante veredicto following a verdict of $1,300,000, a second trial on the issue of damages resulted in an award of $806,000. This award was assessed jointly and severally against both the local and the international. On appeal, the International contended that the district court should have ruled as a matter of law that there was insufficient evidence for the jury to find an agency relationship between it and the striking local union. In rejecting this contention, the Court of Appeals for the Fourth Circuit cited *Gibbs* as authority for the proposition that the responsibility of a union for the acts of its officers and members is to be measured by reference to ordinary doctrines of agency. 511 F.2d 839, 843–844.

■ This Court does not believe that either *Gibbs* or *Great Coastal* is controlling in the instant case. *Gibbs* does not specifically state that agency is a fact question at all times to be decided by a jury. The opinion gives no indication that the question of agency may not be determined as a matter of law. Nor does the language of 29 U.S.C. § 185(e), as interpreted by *Gibbs*, preclude the resolution of an agency question as a matter of law. The applicable statutory language merely provides that the lack of actual authorization or subsequent ratification need not be determinative of an agency question. 29 U.S.C. § 185(e).

The *Great Coastal* case, with its reliance upon the language in *Gibbs*, is easily distinguishable from the instant action. Factually, *Great Coastal* involved clearly illegal secondary boycott activities. In finding that an award as against the International

was justified, the Fourth Circuit relied upon a prior finding in a different context (a criminal case with its more stringent burden of proof) that the International Brotherhood of Teamsters' constitution provides such far reaching control of its member local unions, that the locals, in essence, are not autonomous but are subdivisions of the IBT. 511 F.2d 839, 844. This prior finding may well have been determinative in the *Great Coastal* case, and clearly would have been sufficient to get a prospective plaintiff past a motion for summary judgment.

Further, during the period of illegal conduct complained of in *Great Coastal*, the Brotherhood of Teamsters was in constant communication with the local union. The International was actively involved in the conduct of the strike itself, at least, to the limit of legitimate strike activities. Control of the local by the International in *Great Coastal* was substantial and it would seem that Union involvement in the management and affairs of a local would be justification, given an evidentiary basis therefor, for a finding of agency.

■ In the instant case, there are no allegations that the Defendant, United Association, was in any way cognizant of, or responsible for, the alleged illegal conduct. In the absence of allegations of proof of actual involvement, Plaintiff would have to prove, in order to recover against the United Association, that there is an extant agency relationship from which responsibility for the acts of the local union may be imputed to the United Association.

■ In considering then, whether as a matter of law Plaintiff might recover on a theory of vicarious liability, the Court must look to the constitution and bylaws of the United Association. The question becomes whether the United Association's constitution provides for such far-reaching control of local unions that a jury might find that the locals, in essence, are not autonomous but are subdivisions of the United Association. *International Brotherhood of Team-*

*sters v. U. S.*, 275 F.2d 610, 614 (4th Cir. 1960).

In this connection, Plaintiff points out that the United Association's constitution, which is part of the record here, demonstrates numerous instances where the international exercises control and supervision over local unions. For example, the constitution on the pages indicated allows certain international officers and representatives to: (1) remove local officers [p. 68], (2) change election procedures [p. 65], (3) control the amount of initiation fees, dues, payment periods, etc. [pp. 69–72], (4) levy assessments [p. 46], (5) place the local in trusteeship [p. 48], and (6) revoke a charter altogether [pp. 35 and 51]. Plaintiff points out that, additionally, an entire section of the constitution from pp. 73 to 88 is entitled "General Provisions Governing Local Unions".

In support of its argument that the above-quoted provisions provide a sufficient level of control to support a jury finding of an agency relationship, Plaintiff relies upon *Operating Engineers v. Lassiter*, 87 LRRM 2490 (Fla.Dist.Ct. of App.1974). In *Lassiter*, the issue was whether an international is liable for violence initiated by affiliated locals in jurisdictional disputes. The international alleged that its constitution permitted local unions to conduct their relations with employers, including the right to strike, boycott, and take actions incidental thereto. 87 LRRM at 2492. The trial court found, contra to the international's position, that the international's constitution specifically provided for complete domination of the local unions. The international president had the power to suspend or remove local officers, and to suspend or revoke local charters. He further had the power to prohibit locals from taking any action with an employer unless authorized by the international. Additionally, the local was referred to in the constitution as a "subordinate subdivision" of the international. 87 LRRM at 2492.

In the present context, this Court finds *Lassiter* to be unpersuasive. In order to establish an agency relationship between the Defendant United Association and the Defendant Local Union, the Plaintiff would as proof be required to demonstrate that the constitution of the United Association provides for all-pervasive control of the Local Union. After careful consideration of the United Association's constitution and the affidavits offered in support of the motion for summary judgment, this Court is persuaded that, as a matter of law, for purposes of the present action, no agency relationship exists between the Defendants, United Association and Local Union No. 231. Section 155 of the Constitution of the United Association provides that it shall not be responsible for any actions, activities or admissions of any of its subordinate bodies or their representative unless the same were authorized or directed by the United Association or its general officers. While this is necessarily a self-serving declaration, the uncontroverted affidavit of Martin J. Ward, the General President of the United Association, further establishes that under the United Association's constitution, every affiliated local union, including the Defendant Local here, operates and functions as an autonomous body, separate and distinct from the United Association. Each local union, including the Defendant here, elects and compensates its own officers, transacts its own business, negotiates its own collective bargaining agreements, and under the United Association's constitution, freely governs itself and transacts its own business on its own behalf through its own agents and representatives. Each local has its own bylaws, passes upon the qualifications of persons seeking membership therein, fixes its own initiation fees and dues for members, engages in its own collective bargaining through its own agents, and negotiates and prepares its own collective bargaining agreements. The affidavit of Martin J. Ward further establishes that each local union has control of its own financial affairs, elects and is governed by its own officers, and hires its own employees, all without approval of the United Association.

In weighing the indicia of union control of the Local against the indicia of local

autonomy, this Court is convinced that for purposes of this action the latter are determinative as a matter of law. The case of *Walters v. Plumbers*, 323 F.2d 578 (6th Cir. 1963), would inferentially support this finding. In *Walters*, a non-union contractor engaged in the installation and repair of refrigeration and air conditioning systems was removed from a job as a result of picketing by members of a local of the United Association of Plumbers & Steamfitters, the same entity appearing as Defendant here. In a suit by the contractor against both the Local and the United Association, a verdict was returned jointly and severally against both Defendants. On appeal, however, the Sixth Circuit reversed as to the United Association on grounds that there was no showing that the United Association participated in any of the illegal activities. 323 F.2d at 579. This decision, then, inferentially supports the proposition that there is no agency relationship between United Association and the Defendant Local in the instant case. Had there been such a relationship, the Court of Appeals would have been unjustified in disturbing the District Court's findings in *Walters*.

In view of the above discussion and the findings therein,

IT IS ORDERED that the Defendant United Association's Motion for Summary Judgment be and hereby is granted and that this action be dismissed as to it with costs charged against the Plaintiff.