**TURNKEY CONSTRUCTORS, INC.,**
Plaintiff-Appellee, Cross-Appellant,

v.

**CEMENT MASONS LOCAL UNION**
# 685, Defendant-Appellant,
Cross-Appellee.

No. 77–2354.

United States Court of Appeals,
Fifth Circuit.

Sept. 21, 1978.

Louis L. Robein, Jr., C. Paul Barker, New Orleans, La., for defendant-appellant, cross-appellee.

John G. Torian, II, Robert W. Daigle, Lafayette, La., for plaintiff-appellee, cross-appellant.

Before RONEY, RUBIN and VANCE, Circuit Judges.

PER CURIAM:

Turnkey Constructors, Inc. (Turnkey) sued Cement Masons Local Union No. 685 (Local 685) for damages caused by a secondary boycott engaged in by Local 685 in violation of Section 303 of the Labor Management Relations Act, 29 U.S.C. § 187. The United States District Court for the Western District of Louisiana found Local 685 to be liable and awarded damages to

Turnkey in the amount of $20,000.00.[1] From that award Local 685 appealed to this court. Turnkey also appealed claiming the amount of the award to be inadequate.

The dispute arose in connection with Turnkey's construction of an apartment complex in Lafayette, Louisiana during 1973 and 1974. Turnkey was a non-union contractor. Its employees and most of its subcontractors were non-union. On the apartment job Turnkey had contracted with a union subcontractor for cement finishing and had contracted with Bostic Concrete Company, Inc. to supply concrete. Bostic had an existing collective bargaining agreement with the Teamsters Union.

Because both union and non-union workmen were employed on the same job Turnkey was using a "two gate system" of access to the site. One gate provided access to union workmen and the other to non-union workmen. Shortly after construction began Local 685 began picketing both gates and Bostic drivers honored the picket line. Turnkey responded by opening a third gate.

After several fruitless months of picketing, Local 685 took the more extreme measures which are the subject of this suit. On the morning of December 11, 1973, Bostic dispatched three ready-mix trucks to the American Bank building construction site in downtown Lafayette. The bank building was being constructed by Weill Construction Company and had no connection with the Turnkey apartment project. When the trucks arrived at the bank job they were met by several members of Local 685, including executive board member Oran Williams, and the drivers were told that Local 685 members would not finish Bostic's concrete. In subsequent conversations Bostic representatives were told that the boycott would continue as long as Bostic supplied concrete to employers utilizing a two gate system but that the union would finish Bostic's concrete if Bostic would discontinue supplying concrete to Turnkey.

On December 19, 1973 Bostic notified Turnkey that it would no longer supply concrete to it. In order to finish its job Turnkey was forced to lease its own concrete trucks. The trial judge found that as a result of the Local 685 boycott the apartment project was delayed for two months and that Turnkey sustained damages in the amount awarded.

█ Local 685 does not dispute that the boycott by some of its members took place. It contends, however, that its business agent was the only officer authorized to direct any such action and that there was no proof of participation by its business agent. Under its view of the evidence Oran Williams' leadership of the boycott involved only his role as an individual member for which the union was not liable. It also says that Williams' membership on the executive board gave him no authority to act for Local 685. It is argued that support for this contention is found in both *Gibbs v.* *Mine Workers*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) and in this court's opinion in *United States Steel Corporation v. United Mine Workers of America*, 519 F.2d 1249 (5th Cir. 1975), *reh. denied*, 526 F.2d 377 (1976). Specific reliance is placed on the language in *Gibbs* that there can be no liability on the part of the organization

> without clear proof that the organization . . . charged with responsibility for the offense, actually participated, gave prior authorization, or ratified such acts after actual knowledge of their perpetration. 383 U.S. at 736, 86 S.Ct. at 1144 (quoting *United Brotherhood of Carpenters & Joiners of America v. United States*, 330 U.S. 395, 403, 67 S.Ct. 775, 780, 91 L.Ed. 973 (1947)).

Central to the Local 685 position is the absence of participation by its business agent, and its contention that such proof is essential to liability. We conclude that this position rests on too narrow a view of both the evidence and the authorities.

Oran Williams' statements to Bostic's employees indicated that Local 685's executive

---

1. There appears to be a $753.27 discrepancy between the amount of damages as computed in the district court's memorandum opinion of April 26, 1977 and as later incorporated in the judgment, but neither party presents any question to this court in this connection.

board had voted to authorize the boycott. Whether this is viewed as sufficient proof of such action, however, is not controlling because liability here does not depend on advance authorization. It is clear that virtually the entire membership of Local 685 was engaged in the organized and concerted boycott activity. The business agent arranged and conducted a meeting between the entire membership and the Bostic representative at which the terms for ending the boycott were spelled out.

This case is factually distinguishable from those situations where a national organization is charged with liability for the unauthorized acts of only a segment of its membership and without participation by authorized leadership. The evidence here supports a finding that the illegal boycott was conducted by Local 685 as a functioning entity. Under the authorities liability clearly was established. *Vulcan Materials Company v. United Steel Workers of America, AFL–CIO*, 430 F.2d 446 (5th Cir. 1970), *cert. denied*, 401 U.S. 963, 91 S.Ct. 974, 28 L.Ed.2d 247 (1971); *Eazor Express, Inc. v. International Brotherhood of Teamsters*, 520 F.2d 951 (3d Cir. 1975), *cert. denied*, 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1976), *reh. denied*, 425 U.S. 908, 96 S.Ct. 1502, 47 L.Ed.2d 758 (1976). In *Vulcan Materials* this court held:

> It is well established that as long as a union is functioning as a union it must be held responsible for the mass action of its members. 430 F.2d at 455.

■ Local 685 next complains that the proof does not support an award of damages equal to interest for two months. It argues that the testimony of Turnkey's owner shows that his delay in closing the permanent financing of the apartment project was caused by fluctuations in the money market rather than the secondary boycott. This, however, is wholly beside the point. The evidence supports the trial court's finding that the construction project was delayed for two months as a result of the boycott. Whether the financing was temporary or permanent, Turnkey thereby incurred the cost of two extra months' interest for which damages were recoverable.

■ Turnkey complains by separate appeal that it should also have been awarded damages for lost rentals, truck and salary expenses and cost overruns. The rule of damages in a section 303 action was stated by this court in *Sheet Metal Workers International Association, Local Union No. 223, AFL–CIO v. Atlas Sheet Metal Company of Jacksonville*, 384 F.2d 101, 109 (5th Cir. 1967) as follows:

> While the employer must prove that he has sustained some injury to his business or property, he need not detail the exact amount of damages suffered. It is sufficient if the evidence supports a just and reasonable approximation.

The liberality of the rule, however, does not compel the finder of fact to indulge in conjecture or speculation in reaching "a just and reasonable approximation." The trial judge was reasonably satisfied that as a result of the illegal boycott Turnkey sustained recoverable damages in the amount and of the kind awarded. He was not reasonably satisfied as to any damages in excess of that amount. From our review of the record we conclude that Turnkey has failed to demonstrate reversible error with respect to the amount of the award.

AFFIRMED.