**UNITED STATES STEEL CORPORA-
TION, Plaintiff-Appellee,
Cross-Appellant,**

v.

**UNITED MINE WORKERS OF AMERI-
CA, DISTRICT 20 et al., Defendants-
Appellants, Cross-Appellees.**

No. 77–2696.

United States Court of Appeals,
Fifth Circuit.

July 5, 1979.

William E. Mitch, Birmingham, Ala., for defendants-appellants, cross-appellees.

C. V. Stelzenmuller, D. Frank Davis, Birmingham, Ala., for plaintiff-appellee, cross-appellant.

Before GODBOLD, MORGAN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This appeal involves two kinds of district court action: first, a judgment awarded in favor of an employer against a local union for an "unauthorized" or "wildcat" strike over an arbitrable issue in violation of an implied contractual no-strike clause; and second, contempt sanctions against a local and a district union for violation of a temporary restraining order entered to end the strike. The unions appeal both the damage award and the contempt judgments, and the employer appeals the failure of the court to assess damages against the district

and international unions and its failure to impose stricter contempt sanctions. Holding the court not clearly erroneous in finding the Local responsible for the strike, we affirm all decisions of the district court except the contempt sanction requiring the Local to set up certain internal procedures to be used in the event of a similar future injunction.

The parties are as follows: The employer—the United States Steel Corporation; the Local—UMW Local 8982; the District—UMW District 20; the International—United Mine Workers of America. The scene of action: the Company's Concord mine in Jefferson County, Alabama. The dates involved: March 9 through March 14, 1977.

An unauthorized strike began on the afternoon of March 9, 1977 with a refusal to work by the "evening" shift. Although the grievance underlying the strike was not conclusively established, the district court noted as the most probable cause the Company's refusal to allow an injured worker to collect pay for sitting in the bathhouse, an issue clearly arbitrable under the contract. The strike continued through the "owl" and "day" shifts of March 10, on which date the Company obtained a temporary restraining order enjoining the strike. No appeal was taken, and it is assumed for the purpose of this appeal that injunction was appropriate within the guidelines of *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

The strike continued through another three shifts. On March 11 the unions and three named Local officials received an order to show cause why they should not be held in contempt. Three more work shifts failed to work before the evening shift on Monday, March 14, finally resumed work. Several months later the combined contempt and damage hearing was held and the court's order issued.

The issues raised on appeal are (1) liability of the Local, District, and International for strike damages, (2) contempt adjudications of the Local and District, and (3) permissible penalties for contempt. Although the International was included in the notice of appeal, it prevailed completely in the district court, so its appeal is dismissed. *See Deaton Truck Line, Inc. v. NLRB*, 337 F.2d 697 (5th Cir. 1964).

## I. Liability for Strike Damages

### A. Local liability

The district court found the Local liable for damages of $87,291.

■ Union liability requires a showing that the union in some way made itself a party to the illegal strike. *United States Steel Corp. v. UMWA*, 526 F.2d 377, 378 (5th Cir. 1976), *denying rehearing* to 519 F.2d 1249 (1975). Since the Local's officers did not formally authorize the strike, liability for damages here depends on the Local's responsibility as an entity for the acts of virtually its entire workforce at the Concord mine, approximately 800 miners, almost all of whom participated in the strike. *See Turnkey Constructors, Inc. v. Cement Masons Local 685*, 580 F.2d 798, 800 (5th Cir. 1978) (where illegal activity is conducted by the union membership functioning as an entity, union is responsible for members' mass action).

■ The district court explicitly found this strike was not called by any union official or entity. Liability was premised, rather, on the Local's subsequent ratification of the strike by which it was deemed to have adopted the illegal activity as its own. Ratification occurs where the union's efforts to return strikers are so minimal that the union's approval or encouragement may be inferred. Liability may be avoided, obviously, by a credible demonstration of union disapproval. *See Eazor Express, Inc. v. International Brotherhood of Teamsters*, 520 F.2d 951, 963–964 (3d Cir. 1975), *cert. denied*, 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1976).

■ The conduct of the Local following initiation of the strike must be assessed in light of the mine's strike history. The Concord mine has been the site of wildcat strikes on the average of one per month

during 1977 and almost one every other month for the previous five years. This Court has discussed the legal effect of such a history in another case between these parties. *United States Steel Corp. v. UMWA*, 519 F.2d 1249 (5th Cir. 1975), *reh. denied*, 526 F.2d 377 (1976). The Court stated that a series of unauthorized strikes puts the union on notice, creates or supports an inference of union ratification of strike activity, and raises the level of effort required to exculpate the union from liability. 519 F.2d at 1256.

The Local claims to have exculpated itself by taking immediate steps which it anticipated would end the strike. The Local president and several Mine Committee members went to the bathhouse where miners change into work clothes and told the first shift of striking miners to go to work. When the evening shift did not work, the president called a union meeting for the following morning, Thursday, March 10. The meeting was publicized by radio. At the Thursday meeting the president refused a motion which would have permitted a formal vote on continuing the strike. The miners in attendance were told to return to work. When it became apparent on Thursday night that work was not being resumed, a second meeting was called for the next day. At Friday's meeting the miners were urged to return to work and the president read them the temporary restraining order and advised them of potential contempt sanctions. One Mine Committee member testified that many miners telephoned him on Friday and he told them to return to work.

The Company correctly persuaded the district court, however, that the steps taken were foreseeably ineffective. Reciting a number of available measures which were not tried, the Company points out that the first union meeting was not called at the earliest possible time, Wednesday evening. By not calling a meeting until Thursday morning, the Local insured that the strike would continue at least three shifts through the day shift on Thursday which would miss work to attend the meeting. The Local failed to notify the District until Thursday

morning. Union officials made no attempt to reach striking miners by telephone, though the Company had provided lists of names and numbers in the past and a Company supervisor testified that the Company had been able to reach 90–95% of the employees by telephone in 2½ hours on occasions when the mines were not operating. The Local officials themselves failed to work during most of the strike, and no disciplinary action was ever taken by the Local against strike instigators or participants.

We are not affirming the Local's damage liability on the theory that any particular more effective tactic was left untried, though the availability of stronger persuasive measures is relevant to the critical question of the reasonableness of the steps which were taken. The record supports the district court's characterization of the Local officials' return-to-work directives as "so lacking in authoritative forcefulness that they either were not heard at all . . . or were discounted as being merely stage lines parroted for the benefit of some later judicial review" and its observation that what force the directives did carry was belied by the officials' failure to return to work themselves after issuing them.

Furthermore, the participation in the strike of virtually all Local members and their officers suggests the availability of the "mass action" theory as an alternative basis for Local liability. *Turnkey Constructors, Inc. v. Cement Masons Local 685*, 580 F.2d at 800. No persuasive argument or authority has been advanced to show why the Local should not be responsible for damages thus caused.

### B. *District and International liability*

The Company cross-appeals the district court's finding that neither District nor International was liable for damages. To succeed, the Company would have to show that the District or International in some way also made itself a party to the strike. *United States Steel*, 526 F.2d at 378.

We are unpersuaded by the Company's argument that members of the Mine Committee, because they were charged by the International with responsibility for making binding grievance settlements, were "agents" of the International while dealing with this grievance in however improper a manner. The members of the Mine Committee were elected officials of the Local and their involvement in or endorsement of this particular display of employee dissatisfaction can only be reasonably construed as occurring on behalf of or in furtherance of local interests.

We observe additionally that the "mass action" theory of liability, absent a showing of complicity on the part of a larger union entity, prescribes liability only for the local whose members act collectively. *United States Steel Corp. v. UMWA*, 534 F.2d 1063, 1074 (3d Cir. 1976). While we acknowledge that the Company's evidence of a past pattern of illegal strikes throughout the International's membership is probative of complicity in this illegal conduct, the district court cannot be held clearly erroneous in its finding that the evidence fails to show that either the District or International was in such a position in relation to the strike activity that its inaction would imply endorsement of the wildcat activity.

An isolated wildcat strike like this one is unlike a sympathy strike situation where the International or District's greater ability to communicate with and control *both* sets of participants would suggest extending responsibility to the larger union entity. *See Republic Steel Corp. v. UMWA*, 570 F.2d 467, 478–479 (3d Cir. 1978). Were the subject matter of the strike's underlying grievance one in which the District or International had a strong interest, inaction by those entities might imply endorsement of the strike. *See, e. g., Riverton Coal Co. v. UMWA*, 453 F.2d 1035 (6th Cir.), *cert. denied*, 407 U.S. 915, 92 S.Ct. 2439, 32 L.Ed.2d 690 (1972). The apparent underlying grievance here, however, assignment of work to an injured employee, bore no relation to union organization or any other particular

interest of either entity. *See United Construction Workers v. Haislip Baking Co.*, 223 F.2d 872, 878 (4th Cir.), *cert. denied*, 350 U.S. 847, 76 S.Ct. 87, 100 L.Ed. 754 (1955).

Neither has the Company shown that either the District or International exercises such all-pervasive control over the Local that the acts of the Local may be imputed to the parent entity. Although the International is the exclusive bargaining representative for all union members, charters all locals and provides basic rules for their operation in its constitution, and though the District has substantial grievance settlement responsibilities and is charged with enforcement of the collective bargaining agreement, locals are essentially self-governing bodies. Locals adopt their own bylaws (subject to International approval), conduct their own financial affairs, and elect their own officers and Mine and Safety Committees. Although the International can suspend the autonomy of the local to assure performance of the collective bargaining agreement, as a general matter local members who violate union obligations may be tried and disciplined only by the local. *See generally, F. A. Villalba & Co. v. United Ass'n of Journeymen*, 413 F.Supp. 94, 97–98 (W.D.Tex.1976).

The court's findings regarding damage liability of the District and International are not clearly erroneous and are, therefore, affirmed.

## II. Contempt Adjudications of the Local and District

The temporary restraining order issued on March 10, 1977 enjoined the International, District, Local, and named Local officials from engaging in the strike or from interfering with resumption of work and ordered them to take reasonable steps to inform their members who were Concord mine employees of the issuance and requirements of the court's order. The following day the Company sought an order directed to the District, Local, and three named Local officials to show cause why they should not be held guilty of civil contempt. The order was issued, hearing held, and all were adju-

dicated in contempt. The three individuals fined for contempt have not appealed. The District was fined $75, and the Local was ordered to purge the contempt by filing a plan for expeditious notification of its members of any future court orders issued prior to December 5, 1977, the date of expiration of the contract. Both the District and Local challenge the judgment as to liability, claiming compliance with the commands of the restraining order, and the Local challenges the remedy imposed against it.

 The court's jurisdiction to issue the temporary restraining order is not challenged here. An order issued by the court with jurisdiction over the subject matter and person must be obeyed until it is reversed. *United States v. United Mine Workers*, 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Traditional defenses of substantial compliance or inability to comply are, of course, available. *Washington Metropolitan Area Transit Auth. v. Amalgamated Transit Union*, 174 U.S.App.D.C. 285, 289, 531 F.2d 617, 621 (1976).

 The evidence on which the contempt adjudications were based is summarized by the court:

> (The Local president) called a meeting of the Local for Friday morning; he arranged for announcements of the meeting to be made on three local radio stations; he attended and presided at that meeting, where he in general advised of the contents of the order and of the requirement to end the strike. . . . No significant effort was made . . . to see that the some 600 members not in attendance were informed of the order. (One Mine Committee member) worked his shift next following the Friday meeting; (the president and another Committee member) did not. The only effort by the District to comply with the order was the attendance by the District President at the Friday meeting, at which he told those in attendance of the order and urged their return to work.

The evidence, particularly that of the failure of the Local and District to attempt notification of three quarters of the striking union members, supports the court's contempt findings and they are affirmed.

### III. *Contempt Penalties*

The Company suggested the Local be required to purge itself of contempt through a series of affirmative steps including (1) upon occurrence of wildcat strikes, reduce the grievance to writing, furnish a copy to the Company, and order the grievant to cease striking; (2) all Local officials work during all future wildcat strikes or be subjected to discipline for failure to do so; (3) order wildcat strikers back to work by telephone or in person, record date, time, and manner of notice and furnish record to the Company; (4) investigate wildcat strikes, take statements to be furnished to the Company, and attempt to identify instigators; and (5) impose International trusteeships on locals when local officials fail to carry out these conditions. The court rejected most of the suggested measures as, in effect, injunctive relief prohibited by § 4 of the Norris-LaGuardia Act, 29 U.S.C.A. § 104, or disapproved in *United States Steel Corp. v. UMWA*, 519 F.2d 1236 (5th Cir. 1975), *cert. denied*, 428 U.S. 910, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976). The court, however, approved and imposed a penalty requiring the Local

> to file with the Clerk within 45 days hereafter a plan whereby notification can be expeditiously given to the members of such union of any court order issued prior to December 5, 1977, which enjoins a strike or work stoppage, such plan to contain provisions for recording the identity of those notified and the time of notification. Jurisdiction is retained by the court to review the adequacy of said plan.

The Local appeals imposition of the notice-plan requirement, and the Company cross-appeals the denial of the other requested relief.

 We agree with the district court that the rejected contempt sanctions are foreclosed as attempts to obtain impermissible injunctive relief. Section 4 of the Norris-LaGuardia Act provides:

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

(a) Ceasing or refusing to perform any work or to remain in any relation of employment;

(b) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in section 103 of this title;

(c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;

(d) By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State;

(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;

(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;

(g) Advising or notifying any person of an intention to do any of the acts heretofore specified;

(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and

(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title.

29 U.S.C.A. § 104. A narrow exception to Norris-LaGuardia's injunction prohibitions was recognized in *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). *Boys Markets* permits injunction of strike activity where the strike is over an arbitrable grievance and breaches a contractual no-strike clause, where breaches are occurring and likely to continue, causing irreparable injury to the employer, and where the employer will suffer more from its issuance than the union from its denial. 398 U.S. at 254, 90 S.Ct. 1583.

The *Boys Markets* exception was considered by this Court in the context of prospective injunctive relief in *United States Steel Corp. v. UMWA*, 519 F.2d 1236 (5th Cir. 1975), *cert. denied*, 428 U.S. 910, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976). The Court declared invalid an injunction against striking over local trouble of any kind for the duration of the contract. The Court interpreted the injunction as "an order to work every day" under which the union would have to litigate inapplicability of the *Boys Markets* exception in contempt proceedings. 519 F.2d at 1245. "The carefully drawn guidelines in *Boys Markets*," the Court concluded, "clearly call for case-by-case adjudication." 519 F.2d at 1245.

The requested relief here, though labeled "conditions to future leniency in contempt" by the Company, is of an injunctive nature and is addressed to future work stoppages which may or may not fall within the narrow *Boys Markets* exception. Should the Local regard a future strike as nonenjoinable, it would risk contempt penalties by noncompliance with these coercive conditions. *See also, Bituminous Coal Operators' Ass'n, Inc. v. International Union, UMWA*, 585 F.2d 586, 592–594 (3d Cir. 1978).

The filing of the Local's notice plan ordered by the court, although a much closer case than the rejected relief, is subject to the same objections. The provision obligates the Local to formulate and file a notification plan with the court for implementation upon occurrence of future wildcat activity. The notification duty would arise only upon issuance of another injunctive order. But we think the order contrary to two principles: first, the case-by-case adjudication that this Court has held

necessary in *Boys Markets* cases, *United States Steel Corp. v. UMWA*, 519 F.2d at 1256; and second, impermissibility of a court's involvement in "detailed and continuous supervision" of the parties labor relations. *But see NLRB v. J. P. Stevens & Co.*, 563 F.2d 8, 23–24 (2d Cir. 1977), *cert. denied*, 434 U.S. 1064, 98 S.Ct. 1240, 55 L.Ed.2d 765 (1978) (ordering company adjudicated in civil contempt to formulate set of employee guidelines and to establish a continuing program for education of company management in rights of union organizers); *United States Steel Corp. v. United Steelworkers of America*, 398 F.Supp. 449 (D.Minn.1975) (ordering International to assign a full-time staff member to Local to aid in improving labor-management relations and to institute a training program for company's employees in labor-management relations). Depending upon the circumstances of the strike, a plan for notification of members of a court injunction in one case, might be either more or less than is necessary in another.

We therefore vacate that portion of the contempt judgment and remand for the district court's consideration of sanctions not contrary to this opinion.

AFFIRMED IN PART, AND VACATED AND REMANDED IN PART.