**CONSOLIDATION COAL COMPANY, a corporation, Appellant,**

v.

**LOCAL 1702 UNITED MINE WORKERS OF AMERICA: Freddie W. Kelley, Jr.; Charles R. Fetty; Paul Smerdell; Jack P. Christoff and Richard A. Roberts, Appellees.**

No. 82–1567.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 13, 1983.

Decided June 9, 1983.

Rehearing and Rehearing En Banc Denied July 29, 1983.

illegal work stoppage participated in by the entire membership of the local union. The district court found that the "mass action" theory of union liability is no longer a viable theory, even on the local level, and that the local union could not be held liable for the work stoppage under common-law agency principles. For the reasons which follow, we find that the "mass action" theory is still applicable to local unions and that the actions of the union officers and committeemen in this case were sufficient to bind the union under common-law agency principles.

I

This action arose out of a "wildcat" strike at plaintiff's Blacksville No. 2 Coal Mine in Monongalia County, West Virginia. The work stoppage began at 12:01 A.M. Friday, January 30, 1981 and continued until 12:01 A.M. Wednesday, February 4.

The reason for the work stoppage was the suspension of a union member who had allegedly attempted to remove company property from the mine between 6:00 and 8:00 A.M. Thursday, January 29.[1] The district court found that the strike was solely over an issue subject to arbitration under the parties' collective bargaining agreement and was, therefore, a breach of the contract by the members, officers and mine committeemen of the defendant local and the defendant local itself.

On the afternoon of January 30, the district court issued a temporary restraining order directing the officers, committeemen and members of Local 1702 to return to work. Four days later, on Tuesday, February 3, 1981, the district court held Local 1702, its officers, committeemen and members in civil contempt for willfully violating the January 30 restraining order and assessed civil contempt fines against all the defendants.[2] Union members returned to

Robert M. Steptoe, Jr., Clarksburg, W.Va. (C. David Morrison, Steptoe & Johnson, Clarksburg, W.Va., on brief), for appellant.

C. Patrick Carrick, Fairmont, W.Va. (Ross Maruka, Fairmont, W.Va., on brief), for appellees.

Before RUSSELL and CHAPMAN, Circuit Judges and HAYNSWORTH, Senior Circuit Judge.

CHAPMAN, Circuit Judge:

Consolidation Coal Company appeals from the order of the district court holding that it is not entitled to recover damages against the defendant local union for an

---

1. The accused employee, John Anderson, was suspended by the company with intent to discharge pursuant to the parties' collective bargaining agreement. The dispute over Anderson's discharge was submitted to arbitration after the strike was over and Anderson was returned to work with full back pay.

2. The district court later reduced the fines against the local and the officers and committeemen and remitted totally the fines assessed against individual members of Local 1702.

work at the 12:01 A.M. shift February 4, 1981.

Although the district court found that the officers and committeemen took certain steps to end the work stoppage, it also found there were a number of steps the officials did not take. The officers and committeemen did go to the mine bathhouse at the beginning of their regularly scheduled shifts and encouraged their fellow miners to return to work; however, the union officials were dressed for work only on some of these shifts and never left the bathhouse to actually lead the miners into the mine.

Further, the union officials did arrange a meeting of the local for Sunday, February 1, 1981, at which time they instructed the miners to return to work but no motion to return to work was offered or voted upon. The union officials never arranged for television or radio broadcasts or newspaper advertisements instructing the union members to return to work. The officials never employed telegrams, letters or telephone messages to instruct the members to return to work; nor did union officials ever threaten any members with discipline for failure to work. The officers and committeemen did not set an example by themselves returning to work although work was available.

## II

■ Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976), authorizes an action for damages against a local union for an illegal work stoppage. Before a local union, or any union, can be found liable for such damages, the union's responsibility for the work stoppage must be established according to some recognized theory of liability.

■ The two recognized theories of local union responsibility for an illegal work stoppage are the mass action theory, *Carbon Fuel Co. v. UMWA,* 582 F.2d 1346 (4th

Cir.1978), *aff'd on other grounds,* 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979), and common-law agency theory, *United States Steel Corp. v. UMWA, District 20,* 598 F.2d 363 (5th Cir.1979).

The district court held that the mass action theory is no longer a viable theory of liability at any level of union organization as a result of the Supreme Court's decision in *Carbon Fuel Co. v. UMWA,* 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979). The district court's holding was based on the Supreme Court's language describing the effect of the legislative history of § 301 of the Labor Management Relations Act: "Congress limited the responsibility of unions for strike in breach of contract to cases when the union may be found responsible according to the common law rule of agency." *Id.* at 216, 100 S.Ct. at 413.

Although the district court recognized that *Carbon Fuel* did not involve a judgment against a local union but only judgments against an international and a district union, it held that the applicability of the rule announced by the Supreme Court did not depend upon the level of union hierarchy involved. We cannot accept the district court's interpretation of *Carbon Fuel.*

The question addressed by the Supreme Court in *Carbon Fuel* was "whether an international union, which neither instigates, supports, ratifies, nor encourages 'wildcat' strikes engaged in by local unions . . ., may be held liable in damages to an affected employer if the union did not use all reasonable means available to it to prevent the strikes or bring about their termination." 444 U.S. at 213, 100 S.Ct. at 412. The petitioner, Carbon Fuel Company, had obtained judgments against three local unions which had been affirmed in part by this court,[3] but review of the judgments against the local unions was not sought in the Supreme Court. The question of local

---

This court upheld the decision of the district court in *Consolidation Coal Co. v. Local 1702, UMWA,* 683 F.2d 827 (4th Cir.1982). Our earlier decision left open the question of whether

the mass action theory is still viable as a basis for local union liability. pg. 832.

**3.** *Carbon Fuel Co. v. UMWA,* 582 F.2d 1346 (4th Cir.1978).

union liability for strikes in breach of contract was not before the Supreme Court in *Carbon Fuel* and we do not construe the holding of that case to address local union liability for illegal strikes.

The portion of our decision in *Carbon Fuel* which was not reviewed by the Supreme Court dealt with the application of the "mass action" theory of responsibility to local unions. *Carbon Fuel Co. v. UMWA*, 582 F.2d at 1349. We considered the responsibility of three local unions for thirty-one "wildcat" strikes which were concededly in violation of the collective bargaining agreements between the unions and Carbon Fuel Company and we concluded that the district court was correct in holding the local liable for the majority of those strikes on the basis of the mass action theory.

■ The mass action theory is defined by the rule "that as long as a union is functioning as a union it must be held responsible for the mass action of its members." *United States v. International Union, UMWA*, 77 F.Supp. 563 (D.D.C.1948). In reaching the conclusion that the local unions in *Carbon Fuel* were responsible for the wildcat activity of their members we emphasized "the uncontradicted evidence that all the members of the defendant locals, including their officers, participated in the strikes." 582 F.2d at 1350. We also noted that responsibility for wildcat strikes under the mass action theory will ordinarily be limited to the local union because the local union is usually "the entity whose membership acts in concert." 582 F.2d at 1349, quoting *United States Steel Corp. v. UMWA*, 534 F.2d 1063, 1074 (3d Cir.1976).

■ The Supreme Court in *Carbon Fuel* held that, in view of the collective bargaining history between the parties in that case, neither the international nor the district union was under an obligation to use "all reasonable means" to prevent or terminate wildcat strikes engaged in by local unions. There is nothing in the logic of that holding that prevents the application of the mass action theory on the local level.[4] As we stated in *Carbon Fuel*, "the 'mass action' theory, properly applied, represents a sensible and pragmatic approach to this difficult problem in the area of labor relations." 582 F.2d at 1349–50.

In the present case, the district court found as a fact that "all ... members of the defendant local, as well as all officers and mine committeemen of the defendant local" participated in the work stoppage. This establishes that everyone in the local union was involved and demonstrates that this was mass action by the entire membership.

### III

The district court also concluded that there was insufficient evidence to find Local 1702 liable for the illegal work stoppage under common-law agency theory because there was insufficient evidence to demonstrate that the local authorized, instigated, supported, ratified or encouraged the illegal work stoppage. Consolidation Coal Company argues that this conclusion is erroneous because the district court failed to properly consider the local's lack of efforts to return the strikers to work as evidence of the union's ratification and encouragement of the strike.

4. Only one court of appeals has considered the applicability of the mass action theory to local unions since the Supreme Court's decision in *Carbon Fuel*. *North River Energy Corp. v. UMWA*, 664 F.2d 1184 (11th Cir.1981). *North River* simply assumed, without discussing the effect of *Carbon Fuel*, that the mass action theory still applied to local unions.

Four district courts have considered the application of the mass action theory to local unions since *Carbon Fuel*. Three courts have stated that the theory is still viable at the local level. *Dresser Industries v. United Steelwork-* ers *of America, Local 4601*, No. 81–627E (W.D. N.Y. August 5, 1981); *Encino Shirt Co. v. International Ladies' Garment Workers' Union*, No. 73–W–5093–NE, (N.D.Ala. March 24, 1980); *Keebler Co. v. Local 492–A, Bakery, Confectionery and Tobacco Workers International Union*, No. 80–0798 (E.D.Pa. March 6, 1980). One court has held that the mass action theory no longer applies at any level of union organization. *Airco Speer Carbon Graphite v. Local 502, International Union of Electrical, Radio and Machine Workers of America*, 494 F.Supp. 872 (W.D.Pa.1980).

■ A review of the evidence before the district court leads us to conclude that the court's finding of a lack of ratification and encouragement by the local union is clearly erroneous. Union officials took only two actions in an "attempt" to end the work stoppage: (1) officers and committeemen appeared in the bathhouse at the beginning of their regularly scheduled shifts and "encouraged" their fellow miners to return to work; and (2) union officials arranged a meeting of the local two days after the strike had begun and "instructed" the miners to return to work.

In contrast to these meager efforts to end the work stoppage is a long list of actions that were not taken: (1) union officials never returned to work themselves until they were held in contempt of court; (2) union officials never used television, radio, newspapers, telegrams, letters, or telephones in an attempt to persuade miners to return to work; and (3) union officials never threatened any members with discipline for failure to work. The constitution of UMWA and the bylaws of Local 1702 impose duties on local officials to enforce contracts, to take all measures necessary to end any unauthorized work stoppage and not to participate in any strike not authorized by the international union.

■ The efforts made by union officials to end the strike were "foreseeably ineffective." *United States Steel Corp. v. UMWA*, 598 F.2d 363, 366 (5th Cir.1979). A local union's inaction in the face of an illegal work stoppage by all of its members may constitute ratification of the work stoppage "where the union's efforts to return strikers are so minimal that the union's approval or encouragement may be inferred." *United States Steel Corp. v. UMWA*, 598 at 365; *Airco Speer Carbon-Graphite v. Local 502, International Union of Electrical, Radio and Machine Workers of America*, 494 F.Supp. 872 (W.D.Pa.1980).

The efforts taken by the union in the present case are very similar to the local union's efforts which the fifth circuit found to be "foreseeably ineffective" in *United States v. Steel Corp.* In *United States*

*Steel Corp.*, local union officials appeared at the bathhouse at the beginning of one shift and instructed miners to return to work and officials held meetings on two consecutive days at which miners were instructed to end the strike. In fact, the efforts of the local in *United States Steel Corp.* appear to have been more extensive than the efforts taken in the present case.

■ The lack of efforts by Local 1702 to return its members to work compels us to conclude that the local union ratified and encouraged the strike and is, accordingly, liable under common-law agency theory for damages caused to Consolidation Coal Company by the illegal work stoppage.

■ Liability of a local union for unauthorized work stoppages under common-law agency theory may be founded upon a showing that the union in some way made itself a party to the illegal strike. *North River Energy Corp. v. UMWA*, 664 F.2d 1184 (11th Cir.1981). With every member, including all officers and committeemen, engaged in the illegal strike, the union has made itself a part of the illegality. It may only act through its officers, committeemen and members; so if every one of these is involved in the strike, then the union is also involved.

## CONCLUSION

Based on our holdings that Local 1702 is liable for damages caused by the illegal work stoppage under both the mass action theory and common-law agency theory, we remand this case to the district court for appropriate findings on the amount of damages Consolidation Coal is entitled to recover.

**REVERSED AND REMANDED.**