[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONAMENDED MOTION FOR CONTEMPTPLEADING #211
On December 17, 1993 the Court (Flanagan, J.) entered a judgment pursuant to a written stipulation signed by the parties containing forty-six paragraphs (hereinafter referred to as the stipulation). The action which gave rise to the stipulation commenced by complaint in June 1989. The stipulation was negotiated between the parties during trial which started November 15, 1993. The stipulation saved the parties from a further long protracted decision to enforce and enjoin certain property rights and money damages sought in the complaint. From the instant motion it is apparent that the parties have not put to bed their dispute which gave rise to the complaint seeking money damages and injunctive relief.
The motion for contempt now before the court seeks a factual determination of violations and/or non-compliance to specific paragraphs of the stipulation. The plaintiffs further seek to accelerate the time provisions of paragraph 22 by way of a supplemental judgment to such effect, attorney's fees and costs to prosecute this motion, and for such other relief the court deems CT Page 6902 proper particularly to order a Phase Two Environmental site assessment in order to have the defendants comply with the intent and spirit of paragraph 39. The defendants assert that the plaintiffs are not concerned with specific violations as such but are seeking to close down the business of the defendants immediately or sooner than provided in the stipulation under paragraph 22.
At oral argument after the submission of written briefs the defendants stated that counsel for the plaintiffs in argument characterizes the stipulation as "tantamount to a contract" and one taking this "shot gun" attack on the provision of the stipulation to ask the court by way of a supplemental judgment to terminate the defendants' business. By further argument they suggest that the plaintiffs are not acting in good faith or dealing fairly with respect to the stipulation.
Under the circumstances of this case, the issue to be decided by the court is: (a) was there a noncompliance with the specific provisions of the stipulation, cited by the plaintiffs; (b) is the failure to comply with the provision wilful or without a reasonable explanation; and (c) whether the court should by way of a supplemental judgment pursuant to paragraph 41 accelerate the dates provided in paragraph 22 of the stipulation.
 A
The plaintiffs assert that the defendants failed to comply with paragraphs 5, 6, 10, 18, 22, 26, 28, 29, 34, 36, 38, 39, and 44.
1
Paragraph 5 enjoined the defendants from failing to comply with any and all orders of the East Shore Health District. The plaintiffs assert through the testimony of Dennis Johnson, Director of the East Shore Health District that an order was issued in November 1993 prior to the stipulation, regarding a sink waste drain pipe from the bathroom discharging hot water outside which was a state health code violation. Dennis Johnson (Exhibit E) on November 24, 1993 ordered the defendants to connect the sink drain up to the waste pipe draining into their septic system within two weeks of receipt of the notice. The plaintiffs attempted to demonstrate that through the testimony of Scott D. Stevens, a soil scientist and environmental site assessor who conducted a Phase I CT Page 6903 environmental study, that the waste drain violation of November 1993 still had not been corrected. The defendants offered evidence Exhibit 2, dated December 6, 1993, granting permission to repair a subsurface sewage disposal system, which was being done at the time of Mr. Scott Steven's inspection. The plaintiffs suggested by circumstantial evidence that the November 24, 1993 order was in some way still being violated. The court does not draw any such conclusion upon the evidence offered to support a finding that paragraph 5 at the time of this motion had not been complied with.
2
Paragraph 6 is a prohibition against trespass upon the property by either the defendants and all visitors of the defendants. The plaintiffs argue that the purpose of the prohibition against trespasses was based upon a counterclaim in the original complaint wherein the defendants had asserted a right to a portion of the plaintiffs' property by adverse possession. The plaintiffs do not claim a trespass because of Scott Stevens inspection, but assert a trespass when the defendants excavated with a backhoe in order to comply with paragraph 34 requiring the removal of the septic system to be discussed later in this decision. The testimony offered by the plaintiffs to demonstrate a violation of the trespass prohibition under paragraph 6 was that a truck was parked on their property belonging to George Childs who the defendants dispute is an employee. The evidence offered at trial does not support a finding of a violation of paragraph 6. The use of the backhoe to remove any leeching field piping does constitute an illegitimate invasion upon the plaintiffs' land. The issue as to whether there was compliance with paragraph 34 is later to be discussed. In the totality of the evidence addressed and in view of the purpose of paragraph 6 discussed the court does not find a violation as to paragraph 6.
3
Paragraph 10 enjoin the defendants from increasing the quantity of scrap, debris demolition material or junk metal on the defendants' property from the date of the stipulation. The only disinterested witness and the more credible evidence given by Justine Gillen, the Zoning Enforcement Officer for the Town of Branford, stated, and notwithstanding a 40 yard dumpster filled with scrap material located on the property of the defendants, that there did not appear to be any increase of discarded material since the date of the stipulation. Accordingly, the court finds that the CT Page 6904 plaintiffs have not met their burden to show that the injunction under paragraph 10 has been violated.
4
Paragraph 18 restrains and enjoins the defendants from conducting any business activities, specifically truck traffic on the defendants' right-of-way through plaintiffs' property except for the following hours 5:00 A.M. through 6:00 P.M. on Monday through Friday, 5:00 A.M. and through 12:00 P.M. on Saturdays except for snow removal and plowing equipment which may be used at any time during winter storms. The most heated dispute as to this prohibition arises out of an incident involving the removal of asphalt that was left by an unknown source on the right-of-way. Mark Sachs removed this pile of asphalt after the time curfew to avoid any claim that the defendants violated the trespass prohibition. It did not constitute a violation of the business activity prohibition on the right-of-way under paragraph 18. The argument over the pile of asphalt erupted into an emotional outburst between Mark Sachs and William Howard who exchanged unpleasant unnecessary remarks. The court admonishes the behavior of Mark Sachs. The other incidents testified to in support of the claim of noncompliance with the prohibition from business activities during certain hours were not of such a nature constitute a noncompliance with the overall purpose of paragraph 18 which the court finds was intended not to allow business activities to take place during prohibited hours. One incident testified to by the plaintiffs was social in nature and the other if any, was outside the time of the motion for contempt.
5
Paragraph 26 prohibits the defendants from maintaining any trash on the defendants' property. The evidence offered on this paragraph was shown in a Video Tape (Exhibit F). The prohibition of paragraph 26 is to enjoin the defendants from conducting a solid waste transfer facility or trash compaction site or to store trash. The defendants assert that this paragraph does not enjoin them from cleaning up their property and that which was depicted in the dumpsters is part of the process of winding up its business. The court finds that the evidence produced at trial does not support a finding that the defendants are wilfully failing to conform with paragraph 26.
6
CT Page 6905
Paragraph 28 compels the defendants to remove all storage trailers within 120 days after the entry of the stipulation. The defendants concede that they did not remove them timely. They argue however, that they were unable to meet the time requirement because of the condition of the trailers. They did however, remove the trailers within four days of the required date. Time of the essence for the removal of the trailers was not part of the agreement nor was the harm caused by their delay demonstrated by the plaintiffs.
7
Paragraph 29 compels the defendants at their cost to construct a chain fence of particular substance and sufficient height. The parties agreed that their intention in constructing and erecting said fence is to shield the defendants' property from view from plaintiffs' property and from traffic on the I-95 connector. The defendants were required to erect the fence within 90 days of entry of the stipulation. The defendants argue that failure to meet the time requirement was caused by weather conditions and the need to install a sewer line in the same general vicinity as the location of the fence. The completion was delayed also because an alternate form of screening was proposed. The screening in fact has been completed since May of 1994. Again time of the essence was not provided in the stipulation (contract). No intention not to comply with the stipulation was adduced at trial. Accordingly, the court does not find a wilful disregard of paragraph 29.
8
Paragraph 34 seems to be the most troubling issue between the parties and one that must be considered in light of the defendants' argument that the plaintiffs are not dealing fairly with regards to the stipulated judgment. Paragraph 34 compels the defendants to disconnect, dismantle, and excavate the sewer system that serves the defendants' property and to remove entirely the leeching fields that exist beneath the plaintiffs' property which serves the defendants' sewer system. The time period set forth in paragraph 34 is within 90 days of the stipulation and was to be conducted at such time agreed to by plaintiffs and to be conducted under the supervision and to the satisfaction of plaintiffs' engineer Gordon Belides. The defendants admit that the removal of the leeching fields was not done at a time agreed to by the plaintiffs or under the supervision of Gordon Balides [Belides]. The defendants made an attempt CT Page 6906 within the time period to meet with Belides. The methods which the defendants used to contact Belides although not approved by the court were made to comply with paragraph 34. The evidence at trial demonstrated that all leeching fields were in fact removed within 20-30 feet into plaintiffs' property. Dennis Johnson, the East Shore Director of Health testified he witnessed the excavation. No credible evidence was offered at trial that the leeching fields removal under paragraph 34 was not completed. The activities to remove the leeching fields does not constitute a trespass. The defendants were on the land of the plaintiffs not to assert any rights for adverse possession but to fulfill their duty to remove the leeching fields. The foregoing scenario does not support any noncompliance under paragraph 6.
9
Paragraph 36 compels the defendants to clean the entire right-of-way as reasonably necessary but at least once a week and said cleaning to continue as long as the defendants-maintain non-BL uses or activities on their property. The photographic evidence showed a dirt road which was serviced by a sweeper which on the date of Justine Gillen's inspection was being repaired. The substance of this road would make it difficult to keep clean with one sweeping per week that was required. The plaintiffs have failed to convince the court that the defendants failed to comply with this paragraph.
10
Paragraph 38 compels the defendants to provide a site plan of their property within 30 days. The site plan may be submitted to the Branford Town Officials for approval at the defendants' discretion and the plaintiffs agree to support the plan. A sketch of said plan was to be placed in evidence prior to the judgment marked Exhibit C. The defendants argue that no evidence was offered at trial on this point other than what the defendants produced at trial, Exhibit 3, for the purpose to argue whether certain vehicles were improperly parked on plaintiffs' property. The court will not impose sanctions on the evidence produced relating to a noncompliance to provide a site plan. No demand for such a plan was made to the date of the motion for contempt.
11
Paragraph 39 required the defendants to retain an agreed upon independent environmental study of the plaintiffs' property to CT Page 6907 determine whether plaintiffs' property has been contaminated by pollutants. If independent study recommends further action Phase II and/or III the further action will be paid by defendants. The Phase I was to be completed in 45 days from date of stipulation and if subsequent studies required to be completed in 45 day intervals. If parties unable to agree on said expert or service, parties may apply to the court for the designation and appointment of said expert or service. Scott Stevens, an Environmental Expert, was called by the plaintiffs. The plaintiffs' principal thrust for contempt as to noncompliance with the environmental study seems to rest upon that it was not timely or that it was done without permission so as to constitute a violation of paragraph 6 concerning trespass. As earlier discussed no trespass can be asserted for a necessary compliance with other provisions of the stipulation. Mr. Stevens testified there was a Phase I study done which states that there is no likelihood of contamination on the plaintiffs' property. Paragraph 39 provides that if the parties are unable to agree on the expert or service, the parties may apply to the court for the designation and appointment of said expert. The plaintiffs seek a Phase II study as part of their prayer for relief and the court as part of its equitable powers in this case orders a Phase II investigation and report in 45 days from the date the plaintiffs make the inspection available. The claim that the environmental study was not made timely was explained by Stevens that the weather caused the delay. Also time is not of the essence in considering the issue of contempt under the circumstances.
12
Paragraph 44 required the defendants to apply calcium chloride and water to all areas designated on Exhibit C during any operations involving gravel loam screening and earth material pursuant to the stipulation. Mr. Cheeseman, a plaintiff, testified that during his weekly inspections he did not witness any calcium chloride and water being used to control dust. The defendants provided receipt for purchase of calcium chloride and testified that water and calcium chloride was used during the course of the operations of screening gravel loam and earth material. Nothing was presented in the evidence to demonstrate that the dust problems had increased since the date of the stipulation.
The plaintiffs seek to accelerate the closing dates for the business activities of the defendants pursuant to paragraph 41 as provided for under paragraph 22 of the stipulation. The court is compelled to look at the totality of the circumstances as to the CT Page 6908 claimed noncompliance of the mandatory injunctions set forth in the stipulation. It is obvious that the stipulation is a well reasoned agreement to settle what was an apparent disagreeable situation between the neighboring land owners. The agreement not only provided for mandatory injunctions, it provided for money damages which was bargained for and paid to the plaintiffs by the defendants. The defendants paid for some consideration to wind down its business at a reasonable pace. Of course this does not excuse the poor attitude on the part of the defendants to comply with the provisions timely. Nonetheless, the court must determine if there was a complete disregard for the rights created by the stipulation for the plaintiffs. Overall this court cannot find in the evidence produced as to each asserted violation of the specific paragraphs that the defendants acted wilfully. More so when the heat was on they complied although not timely, no harm for lateness was presented although deadlines were not met, most requirements were substantially fulfilled. No harmful violations now exist. The plaintiffs are still annoyed with their neighbors' business which had to be anticipated when the stipulation was finalized.
It is a well-established rule that "substantial compliance with a court order is a defense to an action for civil contempt. . . ." General Signal Corp. v. Donallco, Inc., 787 F.2d 1376,1379 (9th Cir. 1986); See also, U.S. Steel Corp. v. UnitedMine Workers, 598 F.2d 363, 368 (5th Cir. 1979); Ford Motor Co. v.B H Supply, Inc., 646 F. Sup. 975, 976 (D. Minn. 1986). Where the alleged "violating party has taken `all reasonable steps' comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." GeneralSignal Corp. , 787 F.2d at 1379 (quoting Vertex Distributing v.Falcon Foam Plastics, Inc., 689 F.2d 885, 891-92 (9th Cir. 1982)
The defendants argue that although they concede the presence of the storage trailers violated paragraph 28 of the stipulation, they were removed within several days of the deadline. They do however, present an explanation for their late removal.
The defendants also admit the lateness of the erection of the fence. The court feels that the failure to erect the fence timely does not give rise to warrant acceleration of the closing date of the business activities. All violations have been cured excepting the issue of the Phase II Inspection as ordered herein. The court finds however, a good faith belief on the part of the plaintiffs to seek the redress they may have contemplated by their negotiated agreement. Also the motion for contempt moved the defendants to CT Page 6909 act to comply with all outstanding duties and obligations. In weighing the equities of this case acceleration of the dates in paragraph 22 is unwarranted. The court awards counsel fees in the amount of $10,500.00 plus court costs of $277.20.
Frank S. Meadow State Trial Referee