680 F.2d 622
 110 L.R.R.M. (BNA) 3041, 94 Lab.Cas. P 13,703
 HARDLINE ELECTRIC, INC., Plaintiff-Appellee,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1547,
Larrie Brown, Larry Daniels, Mike Fenwick, Kenneth
Hightower, Al Larsen, David Meade, James Morgan, George
Roberts, Lou Romero, Heinz Troska, Richard Warner, Don
Wedge, and Alex Urritia, Defendants-Appellants.
 No. 80-3270.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 19, 1981.
Decided June 29, 1982.
 
 Paul S. Wilcox, Anchorage, Alaska, for defendants-appellants.
 Stephen C. Hillard, Graham & James, Anchorage, Alaska, for plaintiff-appellee.
 Appeal from the United States District Court for the District of Alaska.
 Before SKOPIL, FLETCHER and FARRIS, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 Hardline Electric (Hardline) brought suit under Section 301 of the Labor Management Relations Act, (LMRA) 29 U.S.C. § 185 (1976) against IBEW Local 1547 (Union) and some of its members, seeking damages and an injunction for violation of the collective bargaining agreement between the parties. The district court issued an injunction against further strike activity, and awarded damages to Hardline in the amount of $329,768. The court also found the union and one of its members in contempt, and, after trial, awarded costs to Hardline. This court has jurisdiction under 28 U.S.C. § 1291 (1976). We reverse.
 
 
 2
 * FACTS
 
 
 3
 This suit arose out of an alleged wildcat strike by some union members against Hardline, an electrical contractor, in July and August of 1978. The Union and Hardline have a long-standing dispute over the composition of work crews required for safety in "single-phase hot line work," i.e., work on certain energized electrical transmission lines. Hardline contends that in the summer of 1978, the Union initiated or condoned a wildcat strike designed to force Hardline to adopt the Union's view that five-man crews are required. The Union denies that there was a strike. It contends that certain individual employees declined to accept jobs with Hardline because they believed the work was not safe. The Union argues that it made every effort required by the contract to refer individuals to Hardline through the union hiring hall; it denies that the no-strike clause in the contract gave it either the obligation or the right to force the individuals involved to work for Hardline on the controversial three-man crews.
 
 
 4
 Hardline filed suit in August of 1978. It sought a temporary restraining order (TRO) against the alleged strike. The district court granted the TRO, and later a preliminary injunction, enjoining the Union from conducting any work stoppages, refusing to provide referrals to Hardline from the union hiring hall, refusing to dispatch employees to Willow and Palmer, Alaska, instructing members not to work for Hardline, and from engaging in other "economic action."
 
 
 5
 At the time it applied for the TRO, Hardline also filed a complaint seeking damages from the Union for profits lost as a result of the alleged work stoppage. The complaint was later amended to include various individual union members as defendants, and to seek contempt sanctions against the Union and its members for violation of the TRO and the preliminary injunction.
 
 
 6
 After trial on the damage action, the court made findings of fact and conclusions of law, and entered judgment awarding Hardline $329,768 for breach of contract, finding the Union and Richard Warner, a union member, in contempt, and awarding Hardline $7,500 for costs incurred in bringing the contempt action. The Union and its defendant members[1] appeal.
 
 II
 ANALYSIS
 
 7
 A. Hardline's Action for Damages.
 
 
 8
 The Union contends on this appeal that Hardline should have been foreclosed from pursuing its action for damages before it exhausted the contractual grievance and arbitration procedure mandated by the collective bargaining agreement.
 
 
 9
 Section 301 of the LMRA, 29 U.S.C. § 185, confers jurisdiction on the district court over suits by or against labor organizations to enforce the terms of a collective bargaining agreement. However, where the collective bargaining agreement provides for mandatory arbitration of some or all of the issues in the dispute, exhaustion of the contractual remedies is normally required. See Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); see also Gateway Coal Co. v. UMW, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). Doubts as to whether the dispute is arbitrable should be resolved in favor of arbitrability. United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (Steelworkers trilogy).
 
 
 10
 Hardline does not argue that the instant dispute would not have been arbitrable under the contract. It argues, however, that the Union waived its right to demand arbitration. Alternatively, Hardline argues that this suit is actually one to enforce a prior arbitration award.
 
 
 11
 The second argument is easily disposed of. The prior arbitration referred to occurred in March of 1978. There the Union brought grievances seeking back pay and reinstatement for members who had refused to work for safety reasons, on three-man crews for three employers, including Hardline. The arbitrator ruled that the refusals were unjustified under the contract and denied the grievances.
 
 
 12
 It is apparent that Hardline could not seek damages in a suit to "enforce" this prior award. The arbitrator determined only that, in the fact situations presented to him, the employers had made an adequate determination that the work was safe, and that employees who refused to work on the jobs were not entitled to reinstatement and back pay.[2] Even assuming that this decision definitively determined the three-man crew issue for all jobs at all times, which we find unlikely, it would not dispose of the issues in this case. Even if the union members had no contract right to refuse to work on a three-man crew, the question remains whether their refusal to accept a job constitutes a work stoppage and, if so, whether the Union initiated or condoned the work stoppage in 1978. There is also a question as to the scope of the Union's duty under the contract to combat a wildcat strike if one, in fact, occurred. The prior arbitration did not address this question. It would have to be arbitrated. See Jacksonville Maritime Ass'n v. International Longshoremen's Ass'n, 571 F.2d 319, 323-24 (5th Cir. 1978). The present suit, therefore, cannot be construed as a suit to enforce the prior arbitration.
 
 
 13
 We next consider Hardline's contention that the Union waived its contractual right to arbitration by not moving for a stay pending arbitration early in the suit. We see no place for the doctrine of waiver on the facts of this case.[3] Hardline sought and obtained an injunction against the Union's alleged strike activity on the basis that the dispute was arbitrable. The Norris-La Guardia Act, 29 U.S.C. §§ 101-115, denies federal courts jurisdiction to enter any injunction "in a case involving or growing out of a labor dispute," 29 U.S.C. § 101, except in certain narrowly defined circumstances, none of which apply to the present case. A court may, however, enjoin a strike pending arbitration when the issue underlying the strike is subject to mandatory grievance-and-arbitration provisions of a collective bargaining agreement. Boys Markets, Inc. v. Retail Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). If the underlying dispute is not subject to mandatory arbitration, no injunction may be entered. Buffalo Forge Co. v. United Steelworkers, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976).[4] The reason for this judicially-created exception is that the federal policy favoring arbitration could not be meaningfully advanced if parties were free to strike over arbitrable issues.
 
 
 14
 The injunction issued by the district court in this case recites the necessary finding that the dispute is arbitrable and enjoins the strike on that basis, citing Boys Markets. The parties were not ordered to arbitrate, however, and Hardline apparently did not attempt to pursue its grievance through arbitration. Hardline's president testified at trial that a grievance "might have been filed," but that no further action was taken.
 
 
 15
 Under these circumstances, Hardline is estopped to argue that the Union waived its right to arbitrate. Hardline invoked the jurisdiction of the federal court on the strength of its assertion that the dispute was arbitrable. It then did not even attempt to arbitrate, but took the matter directly to trial. It would vitiate the Norris-La Guardia Act, and condone an abuse of the federal courts, to allow Hardline to proceed with its damages action without first exhausting its arbitral remedies. The judgment for damages against the Union must therefore be reversed.
 
 
 16
 B. Injunction and Contempt.
 
 
 17
 Hardline also obtained an award of costs against the Union for contempt, because the Union allegedly violated the injunction. The Union appeals the finding of contempt.
 
 
 18
 The injunction enjoined the Union from striking, from refusing to provide referrals to Hardline from the union hall, from refusing to refer employees from Anchorage to Palmer and Willow, and from "otherwise engaging in economic action." It is not clear what portion of the injunction the Union was found to have violated.
 
 
 19
 The scope of the Boys Markets exception to the Norris-La Guardia Act is very narrow, and the propriety of an injunction under Boys Markets depends on the presence of specific factual findings:
 
 
 20
 (E)ach restraint imposed by a Boys Markets injunction must be grounded on a finding by the District Court that the activity restrained is a proper subject for relief despite the Norris-La Guardia Act.
 
 
 21
 Donovan Construction Co. v. Construction Laborers Union, Local 383, 533 F.2d 481, 485 (9th Cir. 1976). In this case, there is no evidence in the record, other than the contract itself, to support a finding that each issue covered by the injunction was arbitrable. No findings were made, and no testimony was taken on the issue of arbitrability.
 
 
 22
 If the scope of the injunction is so broad as to enjoin union activity in situations that the court could not have found to be suitable for Boys Markets relief, because of the paucity of factual support for the necessary findings, the injunction crosses the jurisdictional boundary of the Norris-La Guardia Act.
 
 
 23
 Donovan, 533 F.2d at 485-86 (emphasis in original).
 
 
 24
 We conclude that the injunction granted by the District Court was overbroad, given the lack of factual support for its issuance. It is apparent to the court that enjoining the Union from "otherwise engaging in economic action" cannot be supported by evidence sufficient to satisfy the Boys Markets standards. The court could not find that all "economic action" was arbitrable under the contract.
 
 III
 CONCLUSION
 
 25
 For the reasons given above, we must vacate the injunction and reverse the award of costs against the Union. The case is remanded to the District Court to reconsider, if necessary, the propriety of issuing a new injunction against the Union. The judgment against the individual defendants is vacated, for the reasons given in note 1, supra. The judgment for damages against the Union is reversed, and the case remanded for stay or dismissal pending arbitration.
 
 
 26
 REVERSED and REMANDED.
 
 
 
 [1]
 During the pendency of this case, the Supreme Court decided in Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981), that individual union members cannot be held liable under section 301 for breach of a no-strike agreement. Counsel for both parties therefore stipulated that the judgment against individual members in this action be vacated. We so order, infra
 
 
 [2]
 The prior arbitration resolved a dispute between Hardline and the Union arising in October 1977 over a job "in the Riverdell Estates area." The parties disputed whether use of a three-person crew on that job was unsafe. An agent of Hardline had determined that use of a three-person crew would be safe on the job. The sole question presented to the arbitrator was whether Hardline had breached the collective bargaining agreement by terminating the three-person crew which refused to perform the work. The arbitrator held that, where Hardline's general foreman had visited the jobsite and determined that a three-person crew would be safe, where a backhoe was available to lift the transformer up the pole, where all crew members were qualified journeymen linemen, where adequate safety equipment was available to the crew, and where the weather was not a factor to the crew's safety, Hardline did not breach the contract in insisting on a three-person crew. The arbitrator made clear that his decision turned upon "the absence of compelling evidence that performance of the job by a three-man crew would, in fact, have been unsafe."
 In this case, the dispute arose a year later over a job on Willow Mine Road. The job did not consist merely of hanging transformers, as the prior job had, but also included changing insulators. The foreman of the crew might have acquiesced in hanging transformers with a three-person crew, but he considered doing the insulation with such a crew unsafe. Thus, the prior arbitration covered a different job at a different place and time with different duties.
 
 
 [3]
 Although parties to collective bargaining agreements are ordinarily held to their contractual agreement to arbitrate even absent a timely demand for arbitration, see Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), in some rare cases the public policy favoring labor arbitration is so outweighed by other considerations, see California Trucking Ass'n v. Brotherhood of Teamsters, --- F.2d ---- (9th Cir. 1981) (inordinate delay in raising arbitration issue before the court resulted in waiver), that the court will find a waiver
 
 
 [4]
 In a suit such as this one that requests an injunction against a wildcat strike, the district court should consider whether the union is responsible under common law agency principles for the work stoppage. See Carbon Fuel Co. v. UMW, 444 U.S. 212, 216-17, 100 S.Ct. 410, 413-14, 62 L.Ed.2d 394 (1979). That determination is made solely for purposes of determining the propriety of an injunction issued pursuant to Boys Markets. After such an injunction is issued and arbitration is ordered, the final decision regarding the union's responsibility is to be determined by the arbitrator. Jacksonville Maritime Association v. International Longshoremen's Association, 571 F.2d at 323-24