ALABAMA BY–PRODUCTS CORPORA-
TION, a Corporation,
Plaintiff-Appellee,

v.

LOCAL NO. 1881, UNITED MINE
WORKERS OF AMERICA, etc.,
et al., Defendants-Appellants.

No. 82–7090
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Nov. 1, 1982.

Cooper, Mitch & Crawford, William E. Mitch, Sydney F. Frazier, Jr., Birmingham, Ala., for defendants-appellants.

Cabaniss, Johnston, Gardner, Dumas & O'Neal, William F. Gardner, R. Boyd Miller, Birmingham, Ala., for plaintiff-appellee.

Before HILL, KRAVITCH and HEN-DERSON, Circuit Judges.

PER CURIAM:

The sole issue raised by this appeal is whether sufficient evidence supports the district court's finding of a union and its officials in civil contempt for a strike which allegedly violated a temporary restraining order. Because we find sufficient evidence to support the court's conclusion, we affirm.

On August 25, 1981, Alabama By-Products Corporation (ABC) obtained a temporary restraining order against an illegal wildcat strike. The court's order was granted because the strike was prompted by an issue subject to grievance and arbitration procedures: the implementation of the company's Attendance Control Program.[1] On August 28, 1981, Local 1881 of the United Mine Workers of America and certain union officials were held in civil contempt for continuing the strike in violation of the order. These initial contempt proceedings were not the subject of any dispute, and on August 30, 1981, the miners returned to work. On September 4, 1981, however, the parties agreed to a consent order extending the August 25 restraining order "for a time sufficient to permit the parties to resolve the dispute underlying the strike which was the subject of this action through grievance and arbitration procedures of the collective bargaining agreement between the parties." Transcript at 22.

On November 12, 1981, the miners struck again. An employee, Garvy Tidwell, asked to leave work early in order to visit his wife in the hospital. Tidwell was told, however, that, according to the Attendance Control Program, he had to work his entire shift or not at all. Presumably in sympathy for Tidwell, the other miners stopped work the following evening. The morning after the walkout, the union met to discuss the strike. Although the testimony of union officials is vague as to what was discussed at the meeting, when it was over, a union liaison telephoned a management official and informed ABC that the miners would not return to work until the following Sunday night. The call came just after the union meeting at 10:00 A.M. on Friday.

The company responded to the union's action by filing a new motion for a civil contempt show cause order. ABC alleged that the cause of the work stoppage was the same Attendance Control Program which was the subject of the extended temporary restraining order. Because the Attendance Control Program still was before an arbitrator, ABC argued, the union walkout violated the court's order. The district court agreed. Following a hearing on November 16, 1981, the court held Local 1881 and its officials Greg Gross, Doug Key, Eugene Sadberry, Curtis Dowdy, Jr. and Jim Higginbotham in civil contempt. In support of its order, the court announced *inter alia* the following findings from the bench:

I first find that the work stoppage which occurred beginning with the owl shift at 11:00 P.M. on November 12, 1981, and continued through the next two shifts was over the same subject matter which precipitated the original complaint in this action, and more particularly, that subject which was covered by the Court's injunction, that is to say, the implementation by the plaintiff of its attendance control program . . . .

It is further the conclusion of the Court that at the 10:00 meeting on the 13th of November, the membership of Local 1881 ratified the illegal work stoppage in violation of the Court's injunction by their failure to return to work at the evening shift at 3:00 P.M. that day and therefore, by their inaction the strike further is the strike of Local 1881.

The Court further finds that no member of the Mine Committee and no officer of Local 1881 provided any leadership whatever to their members by proceeding to work at their assigned shift. The Court further finds that the leadership took no significant action to try and determine what the strike was over when

---

1. The order was issued pursuant to *Boys Market, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

very clearly it was over the Garvy Tidwell matter which was associated with directly the attendance control program of ABC.

As I indicated, these findings are based on clear and convincing evidence.

Transcript at 67, 69.

 Initially, the union challenges the court's finding that the strike involved the company's Attendance Control Program. Throughout the hearing, union witnesses suggested that it was unclear whether the Garvey Tidwell incident prompted the walkout. However, the company superintendent testified that he was told the strike was over the company's policy of not permitting employees to leave work early when the union's liaison telephoned him immediately after the union's meeting on November 13, 1981. That the district court chose to believe the superintendent on this issue is a finding of fact which cannot be set aside unless clearly erroneous. Fed.R. Civ.P. 52(a). Great weight must be given to the trial court's findings and inferences, especially when the demeanor and credibility of the witnesses form the basis of the court's determination. *North River Energy Corp. v. United Mine Workers,* 664 F.2d 1184, 1189 (11th Cir. 1981); *United States v. Wiring, Inc.,* 646 F.2d 1037, 1041 (5th Cir. 1981); *Scott v. Moore,* 640 F.2d 708, 729 (5th Cir. 1981). Accordingly, because the strike occurred the evening following the Tidwell incident, and ABC's superintendent testified he was told by the union's representative immediately after the union meeting that the incident prompted the walkout, we cannot say the court's finding was clearly erroneous.

 The union next challenges the sufficiency of proof of active involvement of the union and its officials in supporting the strike.[2] Although a union may not be responsible for an unauthorized strike, *United States Steel Corp. v. United Mine Workers,* 519 F.2d 1249, 1253 (5th Cir. 1975), "[i]t is well established that as long as a union is functioning as a union it must be held responsible for the mass action of its members." *Id.* (quoting *Vulcan Materials Co. v. United Steelworkers,* 430 F.2d 446, 455 (5th Cir. 1970), *cert. denied,* 401 U.S. 963, 91 S.Ct. 974, 28 L.Ed.2d 247 (1971).). In the present case, the union was functioning as a union. The membership clearly decided not to return to work on the next available shift, and the decision was communicated to ABC through a union official acting in his official capacity. The court's determination that Local 1881 ratified the strike was supported by the evidence. *See North River Energy, supra,* 664 F.2d at 1189–90. With respect to the individual officers cited for contempt, all had knowledge of, and were served personally with, the August 25 order restraining strikes over attendance policies. All failed to go to work before the union meeting. All attended and presided over the union meeting, and after the meeting, all failed to return to work on the next available shift. In light of these findings, the district court's contempt citation was justified. *See Jim Walter Resources, Inc. v. International Union, UMWA,* 609 F.2d 165, 169 (5th Cir. 1980); *NLRB v. Teamsters, Chauffeurs, Helpers, Etc.,* 592 F.2d 921, 929 (6th Cir. 1979); *Turnkey Constructors, Inc. v. Cement Masons Local Union,* 580 F.2d 798, 800 (5th Cir. 1978). We therefore

AFFIRM.

---

2. The union also maintains that because its collective bargaining agreement with ABC does not include a no-strike clause, union officials had less duty to discourage the walkout. Although this may be true in an action for damages under a contract, because of the necessity of implying a no-strike clause, *see United States Steel Corp. v. United Mineworkers,* 519 F.2d 1249, 1252 (5th Cir. 1975), here the alleged violation is of a court order which clearly prohibited strikes involving ABC's Attendance Control Program. Moreover, a no-strike agreement is implicit where, as here, the agreement contains an arbitration provision. *Gateway Coal Co. v. UMWA,* 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974).