Thomas I. Atkins, Gen. Counsel, Brooklyn, N.Y., for defendants-appellants.

(Opinion Sept. 1, 1983, 9 Cir., 1983, 714 F.2d 935)

Before BROWNING, Chief Judge, CHOY, GOODWIN, WALLACE, SNEED, KENNEDY, ANDERSON, HUG, TANG, SKOPIL, SCHROEDER, FLETCHER, FARRIS, PREGERSON, ALARCON, POOLE, FERGUSON, NELSON, CANBY, BOOCHEVER, NORRIS and REINHARDT, Circuit Judges.

Upon the vote of a majority of the regular active judges of this court, it is ordered that this case be reheard by an en banc panel of the court pursuant to Rule 25 of the Rules of the United States Court of Appeals for the Ninth Circuit. The previous three-judge panel assignment is withdrawn.

**CONSOLIDATION COAL COMPANY, Plaintiff-Appellant,**

v.

**UNITED MINE WORKERS OF AMERICA, LOCAL 1261, Defendant-Appellee.**

No. 80–2170.

United States Court of Appeals, Tenth Circuit.

Jan. 18, 1984.

Keith E. Taylor, Salt Lake City, Utah (John B. Wilson of Parsons, Behle & Latimer, Salt Lake City, Utah, was also on brief), for plaintiff-appellant.

Willard P. Owens, Gen. Counsel, United Mine Workers of America, Washington, D.C. (Harrison Combs, Atty., United Mine Workers of America, Washington, D.C., and A. Wally Sandack of Sandack & Sandack, Salt Lake City, Utah, were also on brief), for defendant-appellee.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

The questions for decision in this case are whether a local union may be held liable for damages from an unauthorized or "wildcat" strike that resulted from the "mass action" of the local membership but which was not instigated or condoned by local union officers, and whether the local union may be held liable for failing to use its "best efforts" to prevent or terminate the strike, as a violation of an obligation arising from an implied no-strike obligation.

I

As noted in the district court's opinion, *Consolidation Coal Co. v. International Union, United Mine Workers of America,* 500 F.Supp. 72, 73 (D.Utah 1980), there is no substantial dispute as to the relevant facts. The facts were essentially as follows.

■ Consolidation Coal Co. and United Mine Workers of America, Local 1261, are parties to a collective bargaining agreement covering workers at the company's coal mine in Emery County, Utah. Section (c), Article XXIII of the agreement contains a detailed grievance and arbitration procedure for the resolution of disputes between the parties.[1]

On Thursday, May 10, 1979, members of Local 1261 engaged in an unauthorized work stoppage at the Emery Mine commencing with the 11:00 p.m. shift. The walkout apparently stemmed from dissatisfaction over the manner in which a grievance filed by employee Mike Jacobsen was being considered. Billy Miller, the union president, learned of the walkout when he came off his shift at 11:00 p.m. In an attempt to resolve the dispute and to get union members back to work, Miller and other union representatives immediately met with John Badnovinac, the mine superintendent. After conferring during the early morning hours of May 11, the parties reached a temporary negotiated solution to Jacobsen's grievance.

Miller returned to the mine prior to the 7:00 a.m. shift, and told day-shift employees to return to work. He advised the employees that each could be fined $50 by the union if they failed to end the wildcat strike. The employees, however, were dissatisfied with the settlement and refused to heed Miller's order. In addition, threats were made against Local Vice President Lannie Sitterud, who had attempted to remain on the job. Fearing for his safety, Sitterud left work.

Throughout the weekend Miller and other union officials undertook other measures to get members back to work. These included the holding of a membership meeting and the purchase of radio spots to urge members to return to work. Despite these efforts, the wildcat work stoppage continued through the afternoon of May 11, lasting a

---

1. An agreement which provides for the settlement of disputes exclusively and finally by compulsory and binding arbitration gives rise to an implied promise by the union not to strike during the term of the contract in response to such arbitrable disputes. *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 248 n. 16, 90 S.Ct. 1583, 1591 n. 16, 26 L.Ed.2d 199 (1970); *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.,* 369 U.S. 95, 104–06, 82 S.Ct. 571, 577–78, 7 L.Ed.2d 593 (1962).

total of three shifts. Union members reported back to work Sunday, May 13, at 11:00 p.m., the next regularly scheduled shift.

Consolidation brought suit in the district court pursuant to sections 301 and 303 of the Labor Management Relations Act of 1947 (Taft-Hartley Act), as amended, 29 U.S.C. §§ 185, 187 (1976), seeking injunctive relief and compensatory damages. The district court rejected Consolidation's attempt to establish liability based on the "mass action," "best efforts," and agency theories. The court also denied injunctive relief. 500 F.Supp. at 77 (1980).

The district court found that the defendant local union could not be held liable under the agency doctrine because the facts presented by the parties do not show that the union sponsored, authorized, encouraged, condoned or in any way directed the unauthorized work stoppage. *Id.* at 75. The court found that, in view of the circumstances and the isolated nature of the occurrence, the union through its officers acted reasonably in taking measures to get members back to work and did not act or fail to act in a manner which would condone, ratify or encourage the unauthorized walkout. *Id.* at 76. Moreover, while the court recognized the viability of the mass action theory, *id.* at 76–77, the court further held that the union could not be held liable on that theory; that such theory is that as long as a union is functioning as a union, it must be held responsible for the mass action of its members; but that here Consolidation con-

ceded that the union officers lost control and, although mindful of their duty to do so, were unable to control the rank and file. *Id.* The local union's motion for summary judgment was accordingly granted.[2]

On appeal, the issue narrows to whether the mass action and best efforts theories of liability are foreclosed by the Supreme Court's decision in *Carbon Fuel Co. v. United Mine Workers of America,* 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979). Consolidation argues that *Carbon Fuel,* and the restrictive agency standard it enunciated, is limited in application to international and district unions, and is not applicable to local unions, such as the one involved in this case. We disagree and affirm the decision of the district court granting the local union's motion for summary judgment.[3]

## II

The question of union accountability for unauthorized or wildcat strikes has evoked varied responses in the federal courts. Three general theories have been considered for establishing union liability for damages caused by unauthorized work stoppages.

■ The first theory is the "all reasonable means" or "best efforts" approach and is based on a union's implied or express promise not to strike. Under this theory, the union is viewed as having a continuing duty to exercise every reasonable effort to prevent or terminate an unauthorized strike.[4] The second theory, the "mass ac-

2. Although the court's opinion explicitly discusses only the agency and mass action theories, the record shows that the best efforts theory was also raised before the district court. (I R. 53, 58). We therefore treat the court's denial of recovery against the local union as a rejection of all three theories. We also note that the district judge stated that "... the union through its officers acted reasonably in taking measures to get members back to work...." 500 F.Supp. at 76. This statement also at least implicitly rejects the theory of breach of a union duty to exercise its best efforts to stop the strike.

3. At argument, counsel for Consolidation stated that no issue is raised concerning the propri-

ety of the summary judgment procedure as such, and that the facts are uncontroverted.

4. See, e.g., *Eazor Express, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 520 F.2d 951, 963 (3d Cir.1975), cert. denied, 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1976); *Wagner Electric Corp. v. Local 1104, International Union of Electrical, Radio & Machine Workers,* 496 F.2d 954, 956 (8th Cir.1974). But cf. *Southern Ohio Coal Co. v. United Mine Workers of America,* 551 F.2d 695, 701 (6th Cir.), cert. denied, 434 U.S. 876, 98 S.Ct. 227, 54 L.Ed.2d 155 (1977); *Carbon Fuel Co. v. United Mine Workers of America,* 582 F.2d 1346, 1350 (4th Cir.1978), aff'd, 444 U.S. 212, 100 S.Ct. 410, 62

tion" approach, holds that when a large number of union members act in concert to precipitate an unauthorized strike, liability for the members' actions must be imputed to the union. The premise is that large groups do not act collectively in the absence of leadership and that a functioning union must be held responsible for the mass action of its members.[5] Although the courts are divided on the issue,[6] it is our view that these two theories did not survive the Supreme Court's *Carbon Fuel* decision which construed the Taft-Hartley Act as permitting only one basis of union liability in breach of contract suits—a third theory of responsibility according to the common law rule of agency. *Carbon Fuel,* 444 U.S. at 216, 100 S.Ct. at 413.

In *Carbon Fuel,* the employer and the United Mine Workers of America were par-

ties to the National Bituminous Coal Wage Agreements of 1968 and 1971. The agreements contained a promise to settle all disputes through arbitration, and thus an implied no-strike obligation. The agreements also contained a provision that required all parties to "maintain the integrity of [the] contract." In violation of the agreements, members of three local unions engaged in forty-eight unauthorized or wildcat strikes at the employer's coal mines. Efforts of District 17, a regional subdivision of the United Mine Workers of America, to prevent the strikes and to induce the members to return to work were unsuccessful.

Carbon Fuel Company brought suit pursuant to section 301 of the Labor Management Relations Act for injunctive relief and damages. The three local unions, District 17, and the International Union were

L.Ed.2d 394 (1979). *Eazor Express* and *Wagner Electric,* which recognized the "best efforts" theory, were cited by the Supreme Court as contrary to the views of the Court expressed in its *Carbon Fuel* opinion. *See* 444 U.S. at 215 & n. 4, 100 S.Ct. at 413, n. 4.

**5.** *See, e.g., Carbon Fuel Co. v. United Mine Workers of America,* 582 F.2d 1346, 1349 (4th Cir.1978), *aff'd on other grounds,* 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979); *Eazor Express, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 520 F.2d 951, 963 (3d Cir. 1975), *cert. denied,* 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1976); *Wagner Electric Corp. v. Local 1104, International Union of Electrical, Radio & Machine Workers,* 496 F.2d 954, 956 (8th Cir.1974); *Vulcan Materials Co. v. United Steelworkers of America,* 430 F.2d 446, 455 (5th Cir.1970), *cert. denied,* 401 U.S. 963, 91 S.Ct. 974, 28 L.Ed.2d 247 (1971); *United States v. International Union, United Mine Workers of America,* 77 F.Supp. 563, 566 (D.D.C.1948), *aff'd,* 177 F.2d 29 (D.C.Cir.), *cert. denied,* 338 U.S. 871, 70 S.Ct. 140, 94 L.Ed. 535 (1949). *But cf. Southern Ohio Coal Co. v. United Mine Workers of America,* 551 F.2d 695, 701 (6th Cir.), *cert. denied,* 434 U.S. 876, 98 S.Ct. 227, 54 L.Ed.2d 155 (1977).

**6.** *Compare C & K Coal Co. v. United Mine Workers of America,* 537 F.Supp. 480, 488 (W.D.Pa.1982) (mass action theory of liability articulated in *Eazor Express, Inc. v. Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 520 F.2d 951 (3d Cir.1975) repudiated by Supreme Court in *Carbon Fuel, modified on other grounds,* 704 F.2d 690 (3d Cir. 1983) and

*Airco Speer Carbon-Graphite v. Local 502, International Union of Electrical, Radio & Machine Workers of America,* 494 F.Supp. 872, 874–76 (W.D.Pa.1980) (*Carbon Fuel* precludes mass action and best efforts theories at any level of union organization) *and Lakeshore Motor Freight Co. v. International Brotherhood of Teamsters, Warehousemen & Helpers of America, Teamsters' Steelhaulers Local No. 800,* 483 F.Supp. 1150, 1152, 1153 n. 1 (W.D.Pa.1980) (*Carbon Fuel* diffused mass action and best efforts contentions by clearly holding that union can be bound by acts of members only under principles of common law agency) *with Consolidation Coal Co. v. Local 1702, United Mine Workers of America,* 709 F.2d 882, 884–85 (4th Cir.) (nothing in logic of *Carbon Fuel* holding that prevents application of mass action theory on local level), *cert. denied,* —— U.S. ——, 104 S.Ct. 487, 78 L.Ed.2d 683 (1983) *and North River Energy Corp. v. United Mine Workers of America,* 664 F.2d 1184, 1193–94 (11th Cir.1981) (assumed, without discussing effect of *Carbon Fuel,* that mass action theory is still applicable to local unions) *and New York Times Co. v. Newspaper & Mail Deliverers' Union of New York & Vicinity,* 517 F.Supp. 662, 666 (S.D.N.Y.1981) (mass action by union members is sufficient to subject union to liability; *Carbon Fuel* is not to the contrary, but simply holds that action by members of local union does not necessarily subject international union to liability); *cf. Alabama By-Products Corp. v. Local No. 1881, United Mineworkers of America,* 690 F.2d 831, 833 (11th Cir.1982) (per curiam) (upholding civil contempt finding against local union and its officials for violation of T.R.O. with application of mass action theory).

named as defendants. The district court directed verdicts of liability against the local unions for the majority of the strikes on the basis of the mass action theory of liability. With respect to the district and international unions, the court instructed the jury that these defendants had the duty to use all reasonable means to prevent or terminate the wildcat strikes, apparently in reliance on *Eazor Express, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, 520 F.2d 951 (3d Cir.1975), cert. denied, 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1976).* The jury returned a verdict against both unions, and judgments were entered accordingly.

On appeal, the Fourth Circuit affirmed, for the most part, the judgments against the three local unions. However, it vacated the judgments against the district and international unions, and remanded with directions to dismiss.

The Supreme Court granted certiorari to resolve a conflict among the courts of appeal over the standard for vicarious union liability in breach of contract actions under section 301. In *Carbon Fuel* the Fourth Circuit applied common law agency principles in determining the liability of the district and the international unions.[7] In *Eazor Express* the Third Circuit had previous-

ly applied the "best efforts" theory in imposing liability for a union's failure to use every reasonable means to end an unauthorized strike.

After reviewing the statutory language[8] and legislative history[9] of section 301, as well as prior Supreme Court precedent,[10] the Court unanimously determined that the responsibility of the unions to prevent and terminate unauthorized work stoppages in violation of the collective bargaining agreements was limited to cases where the unions could be found liable under the common law rule of agency. The Court rejected the company's arguments that the obligations of the district and international unions to use all reasonable means to prevent and terminate unauthorized strikes is either implied in law because the contract contains an arbitration provision or is to be implied from the provision of the agreement that the parties will "maintain the integrity of [the] contract."

■ Although the Court addressed only the cases involving the international and district unions, the applicability of the rule announced by the Court does not depend on the level of union hierarchy involved. In stating that "Congress limited the responsibility of *unions* for strikes in breach of contract to cases when the union may be found responsible according to the common-

---

7. Review of the judgment against the local unions was not sought on certiorari. *Carbon Fuel Co. v. United Mine Workers of America,* 444 U.S. 212, 215 n. 3, 100 S.Ct. 410, 413 n. 3, 62 L.Ed.2d 394 (1979).

8. 29 U.S.C. § 185 (1976) provides in part:

    (b) ... Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents....

    ....

    (e) ... For the purposes of this section, in determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.

9. The Court cited Senator Taft's explanation, 93 Cong.Rec. 4022 (1947), that section 301(e) requires "legal proof of agency" in order to

hold a union liable. 444 U.S. at 217, 100 S.Ct. at 414. The focus of the legislative history on the local level is revealed by the following statement of Senator Taft quoted in *Carbon Fuel,* 444 U.S. at 217, 100 S.Ct. at 414:

> "If the wife of a man who is working at a plant receives a lot of telephone messages, very likely it cannot be proved that they came from the union. *There is no case then. There must be legal proof of agency in the case of unions as in the case of corporations ...*"

93 Cong.Rec. 4022 (1947) (emphasis supplied in opinion of the Supreme Court.).

10. In *Coronado Coal Co. v. United Mine Workers of America,* 268 U.S. 295, 304–05, 45 S.Ct. 551, 554, 69 L.Ed. 963 (1925), a case predating the Labor Management Relations Act, the Court applied the common law agency standard to unions.

law rule of agency," 444 U.S. at 216, 100 S.Ct. at 413 (emphasis added), the Court fashioned a rule of union liability without differentiating among local, district, or international unions. And no such distinction is made in the statutory language or in the legislative history relied on by the Court.

Professor Cox, in discussing union accountability under section 301, has written:

It is clear that [section 301 does] not impose on labor unions a responsibility beyond that imposed by the normal rules of agency. Section 301(b) provides that a union "shall be bound by the acts of its agents." The conference report clearly explained that under the Act "both employers and labor organizations will be responsible for the acts of their agents in accordance with the ordinary common law rules of agency (and only ordinary evidence will be required to establish the agent's authority)." Consequently, just as a corporation ordinarily is not liable for the acts of a stockholder, so recognition of a labor organization as a juristic personality prevents imposing liability on it for the acts of its members. The problem then becomes wholly one of applying agency principles to various kinds of unauthorized strikes.

Cox, *Some Aspects of the Labor Management Relations Act, 1947,* 61 Harv.L.Rev. 274, 310 (1948) (footnote omitted).

We conclude that a local union's liability for a strike in breach of a collective bargaining agreement, if any, must be determined according to the common law rule of agency, and not by the best efforts and mass action theories urged by appellant.[11] Under this rule, a union is liable only for those actions which it instigated, supported,

ratified, or encouraged. *Carbon Fuel,* 444 U.S. at 216–18, 100 S.Ct. at 413–14; *see also Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 416 & n. 18, 101 S.Ct. 1836, 1845 & n. 18, 68 L.Ed.2d 248 (1981). To hold the union to a higher standard of responsibility would "pierce the shield that Congress took such care to construct." *Carbon Fuel,* 444 U.S. at 218, 100 S.Ct. at 414. There is no showing in the record that Local 1261 instigated, supported, ratified, or encouraged the actions of the employees in the strike.[12] Thus, we affirm the summary judgment in favor of the union.

AFFIRMED.

---

11. Our holding in no way precludes the parties from negotiating and deciding among themselves when union liability is to be incurred and how wildcat strikes are to be handled. *See Carbon Fuel,* 444 U.S. at 218–19, 100 S.Ct. at 414–15 (policy of free collective bargaining is particularly important, if not overriding, purpose of Taft-Hartley Act).

12. The district court did state that the only activity which might indicate ratification by the

union of the illegal strike was the fact that all of the union officials failed to work their own shifts. The court found, however, that each of the officers was subject to threats and intimidation and that the evidence indicates that the union did not act in a manner which would amount to ratification of the unauthorized work stoppage. *Consolidation Coal Co.,* 500 F.Supp. at 75–76.