OLD BEN COAL COMPANY, Plaintiff,

v.

LOCAL UNION NO. 1487 OF the UNITED MINE WORKERS OF AMERICA, et al., Defendants.

Civ. No. 83–4049.

United States District Court, S.D. Illinois.

Sept. 19, 1984.

S. Richard Heymann, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., John W. Leskera, Dunham, Boman & Leskera, Collinsville, Ill., for plaintiff.

James D. Lynch, Springfield, Ill., for defendants.

### MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

Before the Court is plaintiff's Motion for Summary Judgment on the issues of liability. Plaintiff sues Local Union Number 1487 (hereafter Local) of the United Mine Workers of America and certain individuals for damages allegedly incurred due to the breaches of the collective bargaining agreement. The breaches alleged are that the Local engaged in a strike or work stoppage over arbitrable disputes in violation of the collective bargaining agreement's arbitration provision. Liability is sought to be imposed upon the Union under two theories: mass action and common law agency. Before reaching the issue of whether any material factual dispute exists, the Court will resolve the legal issue of whether the mass action theory is still viable after the Supreme Court's decision in *Carbon Fuel Company v. Mine Workers*, 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979).

The Courts that have faced the issue of whether the mass action theory survived *Carbon Fuel* have been anything but unanimous in their conclusions. According to the mass action theory, the union is liable for an unauthorized strike engaged in by a large number of its members; the rationale behind the theory is that "large groups of men do not act collectively without leadership and that a functioning union must be held responsible for the mass action of its members." *Eazor Exp. Incorporated v. International Brotherhood of Teamsters*, 520 F.2d 951, 963 (3rd Cir.1975). In *Carbon Fuel*, the Court was faced with the issue of whether International and District Unions could be liable for unauthorized work stoppages or strikes if they failed to use all reasonable means available to prevent or terminate the stoppages or strikes. The liability of the local unions was not at issue. After examining the liability Congress imposed upon labor organizations under *§ 301 of the Labor Management Relations Act*, 29 U.S.C. § 185 (1947), a unanimous Court concluded that the legal responsibility of the unions was limited by common law agency principles:

> ... Congress gave careful attention to the problem of strikes during the term of a collective-bargaining agreement, *but stopped short of imposing liability upon a union for strikes not authorized, participated in, or ratified by it.* Rather to effectuate § 301(a), the Taft-Hartley Act provided in § 301(b) that a union "shall be bound by the acts of its agents," and in § 301(e) provided that the common law of agency shall govern "in determining whether any person is acting as an 'agent' of another person." In explaining § 301(e), Senator Taft stated, 93 Cong.Rec. 4022 (1947):

> "If the wife of a man who is working at a plant receives a lot of telephone messages, very likely it cannot be proved that they came from the union. *There is no case then. There must be legal proof of agency in the case of unions as*

*in the case of corporations ...* " (Emphasis supplied).

444 U.S. at 217, 100 S.Ct. at 414 (*emphasis supplied*).

The Court also rejected the argument that an obligation of the union to use all reasonable means to prevent or end an unauthorized strike should be implied from the collective bargaining agreement provision obligating the union to "maintain the integrity of this contract." The Court stated that since an earlier version of the collective bargaining agreement containing a clause obligating the union to use their best efforts to prevent work stoppages was purposely deleted by the union, the parties agreed not to impose such a duty on the union. 444 U.S. at 220, 100 S.Ct. at 415. The Court also noted that after the deletion, but before the 1968 or 1971 agreements were enacted, the contracts were construed as not imposing liability on the unions for wildcat strikes; had not this been the parties' understanding, the parties had ample opportunity to change the agreement. 444 U.S. at 222, 100 S.Ct. at 416. (The Court also noted the Seventh Circuit has adopted a similar reading of the contracts since 1971. 444 U.S. at 222 n. 10, 100 S.Ct. at 416 n. 10, citing *Old Ben Coal Corporation v. Local Union No. 1487*, 457 F.2d 162 (7th Cir.1972).) The Court stressed the strong Congressional policy in favor of unrestricted collective bargaining, and noted the union's hesitation "to surrender its freedom to decide what measures to take or not to take in dealing with unauthorized strikes." 444 U.S. at 219–220, 100 S.Ct. at 415. Thus, the Court implied that parties to the collective bargaining agreement could have bargained for greater union liability than that imposed by § 301.

Cases subsequent to *Carbon Fuel* which have held that the mass action theory is still viable have sought to limit the Court's decision as inapplicable to local unions, since local liability was not in issue in the case. *See Consolidation Coal Company v. Local 1702, United Mine Workers*, 709 F.2d 882, 884–885 (4th Cir.1983) *cert. denied,* —— U.S. ——, 104 S.Ct. 487, 78

L.Ed.2d 683 (1983); *New York Time Company v. Newspaper & Mail Deliveries' Union of New York and Vicinity*, 517 F.Supp. 662, 666 (S.D.N.Y.1981); *Keebler Company v. Bakery Workers Local 492–A*, 104 LRRM 2625, 2628 (1980), or have applied or acknowledged the principles of mass action theory without discussing the implication of *Carbon Fuel*. *See Alabama By-Products v. Local No. 1881, Etc.*, 690 F.2d 831, 833 (11th Cir.1982); *North River Energy Corp. v. United Mine Workers of America*, 664 F.2d 1184, 1193–94 (11th Cir. 1981); *Dresser Industries v. United Steel Workers of America Local 4601*, 110 LRRM 2661, 2664 (W.D.N.Y.1981). In the Court's opinion, the better reasoned cases hold that the rationale of *Carbon Fuel* cannot be limited to International or District Unions.

In *Consolidation Coal v. United Mine Workers of America*, 725 F.2d 1258 (10th Cir.1984), the Court of Appeals examined *Carbon Fuel's* reasoning and stated as follows:

Although the Court addressed only the cases involving the international and district unions, the applicability of the rule announced by the Court does not depend on the level of union hierarchy involved. In stating that 'Congress limited the responsibility of *unions* for strike, in breach of contract cases when the union may be found responsible according to common law of agency,' 444 U.S. at 216, 100 S.Ct. at 413 (emphasis added), the Court fashioned a rule of union liability without differentiating among local, district or international unions. And no such distinction is made in the statutory language or in the legislative history relied on by the Court.

725 F.2d at 1263. The Court agrees. The clear language relied on by *Carbon Fuel* in limiting the union's liability to that imposed by common-law agency principles applies to "*any labor organization.*" 29 U.S.C. § 185(b). Additionally, the parties are free to negotiate as to whether additional union liability for unauthorized strikes will be imposed. 725 F.2d 1263 n. 11. Other

Courts are in accord. *See Hardline Electric, Inc. v. International Brotherhood of Electrical Workers, Local 1547,* 680 F.2d 622 (9th Cir.1982) (where injunction against wildcat strike is sought, district court should consider whether union is responsible under agency principles, *Id.* at 626 n. 4); *California Trucking Association v. Brotherhood of Teamsters,* 679 F.2d 1275 (9th Cir.1981) (for local liability, "law still requires proof of agency in order to impose liability for damages resulting from wildcat strikes; recovery denied absent instigation, support, ratification or encouragement of work stoppages." *Id.* at 1287 *c.f.* n. 17, at 1287); *Davis Company v. United Furniture Workers Etc.,* 674 F.2d 557 (6th Cir. 1982) (union not liable for illegal strike absent showing of authorization, participation, or ratification, *Id.* at 564–565); *Shimman v. Frank,* 625 F.2d 80 (6th Cir.1980) (Union liable on agency theory only. *Id.* at 95–96); *Airco Speer Carbon-Graphite v. Local 502, Etc.,* 494 F.Supp. 872 (W.D.Pa. 1980); *Lakeshore Motor Freight v. International Brotherhood of Teamsters, Etc.,* 483 F.Supp. 1150 (W.D.Pa.1980). *c.f. T.W. Helgesen v. International Association of Bridge, Etc.,* 548 F.2d 175, 184 (7th Cir. 1977) (Pre-*Carbon Fuel* case implying sole measure of union responsibility is agency principles).

■ The Court's decision in this regard is also buttressed by references to *Carbon Fuel* in the subsequent case of *Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1980). In *Complete Auto Transit,* the Supreme Court was faced with the issue of whether a cause of action against union members existed for breach of a no-strike agreement. The Court concluded as follows:

> The legislative debates and the process of legislative amendment demonstrate that Congress deliberately chose to allow a damages remedy for breach of the no-strike provision of a collective bargaining agreement only against unions, not individuals, *and, as to unions, only when they participated in or authorized the strike. See Carbon Fuel Co. v. Mine Workers,* 444 U.S. 212, 216 [100

S.Ct. 410, 413, 62 L.Ed.2d 394] (1979). Congress itself balanced the competing advantages and disadvantages inherent in the possible remedies to combat wildcat strikes, and 'we are strongly guided by its choice.'

451 U.S. at 416, 101 S.Ct. at 1845 (*emphasis supplied*). The Court's language in the above quoted material broadly referring to all unions, not just those on the international or district level, is indicative that *Carbon Fuel* was meant to apply to locals as well. Accordingly, the Court holds the mass action theory is no longer viable as a separate theory of liability. However, the Court believes it would be unrealistic to hold that the mass action of a large number of union members is irrelevant when making a determination as to a Local Union's liability. The rationale behind the mass-action theory is that "large groups of men do not act collectively without leadership." *Eazor, supra* at 963. Thus, the mass action theory has in actuality served a legal device by which agency liability on the part of the Local Union was presumed where mass action by its members occurred. The dictates of *Carbon Fuel* would seem to preclude a conclusive presumption of this sort. However, logic would not exclude evidence of a mass action as being irrelevant to an inference of agency liability on the part of the Local under the principles of *Carbon Fuel.* Plaintiff may introduce evidence of mass action and argue to the jury that such mass action could not have occurred absent ratification, authorization or participation by union agents acting within the scope of their authority. Defendant may introduce evidence and argument to the contrary. What weight should be given to any such evidence of mass action as indicative of agency liability will be for the jury to determine, depending on the facts of the case.

■ Thus, the Court will proceed to examine whether summary judgment is appropriate solely on an agency theory. Under the theory of common-law agency espoused by the Supreme Court, a union is liable only for strikes which it authorized,

participated in, ratified or encouraged. *Consolidated Coal, supra,* 725 F.2d 1258 at 1263. The "all reasonable means" test which plaintiff refers to was rejected by *Carbon Fuel* and has no place in a theory of common law agency. However, whether action or lack of action by the union is indicative of agency liability is a question for the jury.

A helpful summary of agency liability is found in the case of *Central Appalachian Coal Company v. United Mine Workers of America,* 376 F.Supp. 914, 922–923 (S.D.W. Va.1974):

> The Court would begin by pointing out that the law does not generally hold a union organization responsible for the unsanctioned acts of its individual members. (citations omitted) Liability under § 301 of the LMRA does not, however, require union complicity in the form of an express or official authorization or ratification. Rather, it is sufficient that an authorized union agent has acted in a manner tending to instigate, encourage, condone or otherwise support the breach activity (citations omitted).

> It is necessary, of course, that the union agent or agents involved have been acting within the scope of their authority and on behalf of each of the union affiliates charged.

■ Thus, in the present case, plaintiff must show as a matter of law, that union agents acting within the scope of their authority authorized, participated in, ratified or encouraged the strike. In the Court's opinion, plaintiff has not met its burden of proof.

Initially, the Court notes that plaintiff liberally refers to statements in depositions which it did not provide to the Court. Thus, the evidentiary basis for the motion is lacking. However, even assuming that the statements referred to were in fact made, union liability is not clear as a matter of law. The two cases cited by plaintiff as supportive of its position do not stand for the proposition that certain actions or inactions by the union will result in its liability as a matter of law. Rather, in the

circumstances of the cases before them, the Courts found union liability due to the fact that efforts by union officials to end the strike were "foreseeably ineffective." *Consolidation Coal Company v. Local 1702 UMWA, supra,* at 886; *United States Steel Corp. v. UMWA,* 598 F.2d 363, 366 (5th Cir.1979). This decision was made in *United States Steel* in the context of a mine which had wildcat strikes on a frequency of one every other month for the previous five years. The sufficiency of the union's actions to avoid liability was viewed in light of the past strike history. *See Consolidation Coal Company v. International Union, Etc.,* 500 F.Supp. 72, 76 (D.Utah 1980). Plaintiff has not introduced similar evidence in support of its motion (and defendants contend such evidence would be inadmissible in any event) except to refer to a 10 year old Seventh Circuit opinion which detailed strike frequency of Local 1487 in the early Seventies. Whether such evidence is relevant to actions in the 1980's is highly doubtful. The Fourth Circuit in *Consolidation Coal Co., supra,* relied heavily on the facts of *United Steel* to also hold that union efforts to end the strike were foreseeably ineffective without any indication that they were viewed in light of past strike activity. Furthermore, there is evidence in the present case that greater efforts were made by the union in the work stoppages at issue here than was the case in *Consolidation Coal Co., supra,* 709 F.2d 882. *See portions of depositions* cited in defendants' Memorandum, at p. 34–35. It is also important to note that some of the actions not taken by the Union in *Consolidation Coal, supra,* 709 F.2d at 886, and relied on by the Court to impose liability have been viewed by other Courts as inconclusive to demonstrate ratification, authorization, encouragement, etc. *See North River Energy Corporation, supra,* at 1192 (failure of union officials to work cannot be construed as authorization); *United Steel Workers of America v. Lorain, Etc.,* 616 F.2d 919, 923 (6th Cir.1980) (failure to discipline strikers did not support inference of ratification). Neither does the Court find that the plaintiff has

carried its burden when the alleged mass action of its members is also considered as proof of defendants' agency liability. Plaintiffs arguments in this regard are conclusory and, in the Court's opinion, should be presented to the jury for its determination in light of all the circumstances in the case.

The Court may not try disputed fact questions on the basis of evidence before it (*Carter v. Williams,* 361 F.2d 189, 194 (7th Cir.1966)) and all inferences drawn from such evidentiary materials must be in favor of the non-moving party. *Cedillo v. International Association of Bridge, Etc.,* 603 F.2d 7, 11 (7th Cir.1979). Applying this standard, the Court does not find summary judgment appropriate. In sum, the Court believes the question of union liability for the strikes at issue is best resolved by the jury at trial where a clearer picture of the exact circumstances involved and the reasonableness of union's actions or inactions in light of those circumstances may be had.

Accordingly, plaintiff's Motion for Summary Judgment is hereby DENIED.

IT IS SO ORDERED.